STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DENNIS PRIESTER, DEFENDANT-RESPONDENT.

Argued December 11, 1984—Decided May 7, 1985.

———————— ——————————————————————
 
 

————————

126 <span style="background:black;color:black"></span>

*Anne C. Paskow*, Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *Jane A. Grall*, Deputy Attorney General, of counsel and on the brief).

*Philip De Vencentes*, argued the cause for respondent (*Galantucci & Patuto*, attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

New Jersey Court Rule 3:21–10(b)(2) provides for the amendment of a "custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant." The issues presented in this appeal are (1) what factors should a court consider when exercising its discretion in determining whether a prisoner should be released from prison under Rule 3:21–10(b)(2), and (2) may a court apply this Rule not to release a prisoner, but to reduce his sentence.

The trial court denied the defendant, Dennis Priester's motion for release from his custodial sentence. The Appellate Division reversed the trial court and amended Priester's sentence by "excising his parole ineligibility term." We granted the State's petition for certification. 97 *N.J.* 637 (1984).

I

In the early morning hours of December 22, 1979, two fourteen-year-old girls were babysitting at the apartment of a neighbor. Priester and a friend arrived at the apartment and asked for the neighbor. When the girls informed the two men that she was not at home, they asked if they could enter the apartment to use the telephone. Shortly thereafter, Priester, armed with a beer bottle, raped one of the young girls while his friend raped the other. The girls reported the incident to the police later that day.

On March 6, 1980, Priester was arrested under a Bergen County indictment for a different offense and was incarcerated at the Bergen County Jail. On May 12, 1980, based upon his acts in this case, Priester was charged in Passaic County with aggravated sexual assault, in contravention of *N.J.S.A.* 2C:14–2(a)(4) and (6), and with possession of a weapon with purpose to use it unlawfully, in violation of *N.J.S.A.* 2C:39–4(d). Priester has an extensive criminal record. His juvenile record extends back to 1961 and his adult record is comprised of a series of burglary and robbery arrests. At the time Priester committed the acts with which he was charged in Bergen County and in this case, he was in violation of parole for a conviction of armed robbery in Florida.

On August 24, 1980, during the pendency of the charges in this case, Priester escaped from the Bergen County Jail. In the course of that escape, he suffered serious spinal injuries with severe and permanent sequelae, including weakness in the lower extremities, diminished use of his legs, and impairment of bladder, bowel and sexual functions. He underwent surgery and was hospitalized for an extended period.

On April 9, 1981, Priester entered a *retraxit* plea of guilty to the aggravated sexual assault charge. In exchange for this plea, the State agreed to dismiss one count of the indictment and to recommend that his custodial sentence not exceed a term of ten years. The State indicated that Priester's "physical condition" was a factor considered in formulating the plea. At the time of his sentencing, defendant submitted a medical report prepared by Dr. J. Ladenheim, dated June 12, 1981, which described defendant's condition. The report was based upon a consultation with Priester conducted on September 4, 1980.

> On examination the patient had weakness in both lower extremities with anesthesia in scattered portions of the legs and in the private area. The patient has impairment of bladder and bowel function. * * * The patient also received injuries impairing sexual function.

The doctor further noted that as a result of therapy, Priester was ambulatory with the aid of a cane and had learned to catheterize himself. He concluded that the patient required continued rehabilitation, preferably at a center with rehabilitation facilities and access to urological care.

The trial court sentenced Priester on July 8, 1981, to the custody of the Department of Corrections for a term of ten years with a five-year period of parole ineligibility. It found the plea agreement to be overly lenient, given the seriousness of the crime, but accepted it because of defendant's physical condition. The court stated:

> As to mitigating circumstances, the Court can find absolutely none. I might say, parenthetically, that the Court wrestled for some time with whether or not I would accept this plea bargain. Frankly, I think you deserve the full measure of the law, the full 20 years. However, a higher authority has intervened in this matter and, for that reason, I am going to go along with the plea negotiations.

Priester appealed, seeking credits for time served prior to conviction. *R.* 3:21-8. On July 28, 1982, the Appellate Division modified his sentence, approving those credits requested. Priester was incarcerated at Trenton State Prison where he was initially placed in the prison hospital and later transferred to the prison's "medical clemency" wing.

On August 12, 1982, approximately a year after he was sentenced, Priester moved for reconsideration of his sentence pursuant to Rule 3:21-10(b)(2). Neither defendant nor the State introduced new testimony. Priester submitted his own certification and the certification of his attorney. He also produced letters from chaplains at Trenton State Prison and from physicians.

Dr. Ladenheim's letter dated June 12, 1981, was resubmitted along with a supplemental letter, dated October 14, 1981, in which the physician requested "medical clemency" for the patient. A letter from another doctor, who had evaluated defendant's condition in November 1981, stated that Priester "would greatly benefit by the availability of rehabilitative services,

both physical rehabilitation or medical treatment, outside of the prison environment." A letter from a third doctor, dated November 27, 1981, described defendant as "in need of an intensive rehabilitative program to help him walk better and for urological reasons." This third physician concluded that medical clemency should be allowed "if the State of New Jersey's prison system does not have the opportunity for a rehabilitation program in the form of physical therapy." None of the doctors who submitted letters had examined the defendant recently; their observations were based on visits that had occurred at least 11 months prior to the defendant's motion.

The trial court, in denying Priester's motion, stated:

Taking the totality of the circumstances, all of the circumstances involved, I cannot, under any circumstances, see my way clear to making any kind of amelioration of the sentence that was imposed. * * *

The trial court added, however, that it would contact the proper authorities in an attempt to obtain the appropriate help needed by Priester.

The Appellate Division reversed the trial court's order and amended the defendant's sentence "by excising the parole ineligibility term, to the end that the Parole Board may freely exercise the discretion entrusted to it by statute to determine when and under what circumstances an inmate may be paroled." In reaching its decision, the court relied upon the fact that the State presented no proofs to meet or contradict the allegations made by defendant. The court held that the State is required to rebut allegations of illness and infirmity based solely on a prisoner's own certifications and letters written by doctors who had not examined the defendant in many months. In response to this ruling, the State sought to supplement the appellate record pursuant to Rule 2:5-5 by submitting the affidavit of the hospital administrator for Trenton State Prison. The Appellate Division refused the State's motion to enlarge the record. The State petitioned for a rehearing, which was denied, and thereafter petitioned for certification.

## II

In 1975, the New Jersey Supreme Court Committee on Criminal Practice recommended substantial revisions of Court Rule 3:21–10. Note, *Survey of Criminal Procedure—Modification of Sentences*, 30 *Rutgers L.Rev.* 657, 668 (1977) [hereinafter cited as *Note*]. Rule 3:21–10 provides that a motion to reduce or change sentence must be made within a specific time after judgment by the trial or appellate court, subject to certain exceptions under which the motion may be made at any time.[1]

Paragraph (a) establishes time periods within which a motion for reduction or change of sentence must be filed. Effective September 8, 1975, paragraph (b), subsections (1), (2) and (3), were adopted to enlarge the exceptions to the strict and otherwise unenlargeable time limitations of paragraph (a). Paragraph (b) was amended effective September 1979 by the addition of exception (4) and amended again effective September 1983 by the addition of exception (5). *Pressler, Current N.J. Court Rules*, Comment R. 3:21–10(b)(2) (1985).

Prior to the amendment of this Rule, only the Governor, by exercise of his pardon power, could at any time release an ill or infirm inmate. Historically, this clemency power had been exercised under subjective standards, unbound by precedent,

---

[1] The Rule provides in pertinent part:

3:21–10. Reduction or Change of Sentence

(a) Time. Except as provided in paragraph (b) hereof, a motion to reduce or change a sentence shall be filed not later than 60 days after the date of the judgment of conviction. The court may reduce or change a sentence, either on motion or on its own initiative, by order entered within 75 days from the date of the judgment of conviction and not thereafter.

(b) Exceptions. A motion may be filed and an order may be entered at any time (1) changing a custodial sentence to permit entry of the defendant into a custodial or noncustodial treatment or rehabilitation program for drug or alcohol abuse, or (2) amending a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant or (3) changing a sentence for good cause shown upon the joint application of the defendant and prosecuting attorney, or (4) changing a sentence as authorized by the Code of Criminal Justice, or (5) changing a custodial sentence to permit entry into the Intensive Supervision Program.

and given little time and attention. *Note, supra,* at 669. In proposing the new paragraph (b), the Committee on Criminal Practice determined that " 'while the judiciary has not exercised the power in the past, the courts have the inherent power, subject to any specific limitations set down by the Supreme Court to reduce or change a sentence at any time.' " *State v. Robinson,* 148 *N.J.Super.* 278, 283 (App.Div.1977).

There are few New Jersey cases interpreting Rule 3:21–10(b)(2). *State v. Tumminello,* 70 *N.J.* 187 (1976), was the seminal case interpreting this section. In that case, defendant had been convicted of conspiracy to take and make book. He had no prior criminal record. He was sentenced to a prison term of one to two years. After his indictment but before his sentencing, defendant was afflicted with diabetes mellitus, which required recurring hospitalization and the amputation of several toes due to infection.

As a result of his condition, defendant had lost one toe by the time of sentencing. Following his sentencing, Tumminello was readmitted to the hospital and one toe on his left foot was amputated. The following year a third toe was removed. While his case was pending before this Court, yet another toe was removed. Affidavits were submitted by Tumminello's doctors, who opined that the aggravating circumstance of imprisonment "might well result in the loss of one or both of his legs due to infection." *Id.* at 190.

We held that defendant should be released from prison pursuant to Rule 3:21–10(b)(2). Among the circumstances that influenced our determination were the following: the serious nature of the defendant's illness, the devastating effect of incarceration on defendant's health, the sentencing court's lack of knowledge of the nature of the defendant's illness since he had no medical evidence before him whatsoever, that court's resultant inability to envision the rapid progress and devastating effects of the disease on the defendant, the venial nature of the crime involved, and the absence of a prior criminal record. However,

we expressly reserved judgment in those situations in which the underlying crime was of a more serious nature. "The scale might very well tip in favor of incarceration despite the possibility of adverse physical effects were we faced with an experienced criminal or with a more shocking crime." *Id.* at 194.

Progeny of *Tumminello* have moved to occupy that gap. *State v. Sanducci,* 167 *N.J.Super.* 503 (App.Div.), certif. denied, 82 *N.J.* 263 (1979), is similar to the case before us today. There, a defendant convicted of threatening to kill for the purpose of extortion moved to have his custodial sentence suspended due to his health. Defendant Sanducci suffered from a long-standing chronic pulmonary condition and diabetes. He suffered a heart attack after imposition of his sentence and while his appeal was pending. He claimed that "in view of his poor state of health, particularly his severe heart condition and long standing diabetic condition, both of which require continued treatment and medication, the trial judge erred in failing to amend his custodial sentence to permit his immediate release from State Prison pursuant to *R.* 3:21–10(b)(2)." *Id.* at 510. In *Sanducci,* it was evident that the trial court was aware of defendant's alleged infirmities at the time of imposing the original sentence. In affirming, the Appellate Division found that the seriousness of the crime and the availability of medical care and treatment in the prison setting militated against any interest that might be served by suspending the sentence. The Appellate Division, in applying the balancing test espoused in *Tumminello,* stated:

> Moreover, consideration of all of the factors, especially the serious nature of the crime and the circumstances attendant upon its commission, compels the conclusion that the trial judge properly denied his motion. The purposes underlying the continuation of defendant's custodial sentence outweigh any interest which might be served by suspending it. Cf. *State v. Tumminello,* 70 *N.J.* 187, 195 (1976).
>
> [*Id.* 167 *N.J.Super.* at 510.]

In *State v. Meighan,* 173 *N.J.Super.* 440, 456 (App.Div.), certif. denied, 85 *N.J.* 122 (1980), the Appellate Division affirmed the trial court's refusal to release from prison a defend-

ant convicted of manslaughter who was suffering from sickle-cell anemia. Here, the key considerations were the seriousness of the crime and, unlike *Tumminello,* but like *Sanducci,* the fact that the trial court knew of the defendant's medical condition at the time of sentencing. In fact, the trial court specifically sentenced defendant to the Youth Complex because of his condition.

### III

Court Rule 3:21–10(b)(2) offers extraordinary relief to a prisoner. There is no greater benefit one can bestow on a prisoner than release from prison. Accordingly, the Rule must be applied prudently, sparingly, and cautiously.

A motion made pursuant to Rule 3:21–10(b)(2) is committed to the sound discretion of the court. *Tumminello, supra,* 70 *N.J.* at 193. It is an extension of the sentencing power of the court, involving the same complexity as the sentencing decision and the same delicate balancing of various factors.

The predicate for relief under the Rule is proof of the serious nature of the defendant's illness and the deleterious effect of incarceration on the prisoner's health. As proof of the devastating effect of prison life on a defendant's health, the court should consider the availability of medical services in prison, including rehabilitative therapy. However, this factor is important only insofar as it tends to establish that without such medical services the defendant's condition will seriously worsen or deteriorate in prison. It is the existence of this serious threat to defendant's physical condition, rather than the prison system's ability to provide beneficial and desirable medical services, including rehabilitative health care, that is determinative of a Rule 3:21–10(b)(2) motion. Therefore, in order to prevail, the prisoner must show that the medical services unavailable at the prison would be not only beneficial and, in the case of therapy, rehabilitative, but are essential to prevent further deterioration in his health. *See Tumminello, supra,* 70

*N.J.* at 193 (medical evidence clearly established that defendant's condition was rapidly deteriorating and his health would be placed in greater danger by incarceration).

Moreover, a prisoner also must show that changed circumstances in his health have occurred since the time of the original sentence. Support for that position is found in logic and federal law. Court Rule 3:21–10 was patterned after Federal Rule of Criminal Procedure 35.[2] *State v. Tumminello, supra,* 70 *N.J.* at 194. In ruling on motions for reduction of sentence pursuant to Federal Rule of Criminal Procedure 35, federal courts have held that "the Court does not grant ordinarily a motion for a reduced-sentence when the ground advanced therefor was considered when the sentence was fixed." *United States v. Bundy,* 587 *F.Supp.* 95, 97 (M.D.Tenn.1983) (citing *United States v. Ellenbogen,* 390 *F.*2d 537, 543 (2d Cir.1968)); *see* 8A J. Moore, Moore's Federal Practice ¶ 35.02[1] (2d ed. 1984). Moreover, if Rule 3:21–10(b)(2) were held to provide for review of a sentence in the face of no new circumstances, it would effectively vitiate the time requirements imposed by Rule 3:21–10(a).

Thus, an essential predicate to the review of a custodial sentence pursuant to Rule 3:21–10(b)(2) is that a change of circumstances must have occurred. The change of circumstances most likely to have occurred between the sentencing and the hearing is the severe deterioration of the prisoner's health. However, the change may also represent a court's

---

[2]The pertinent provision of Federal Rule 35 states:
(b) REDUCTION OF SENTENCE. The court may reduce a sentence within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision [Fed.R.Crim.P. 35(b).].

securing information about the defendant's health previously unknown to the sentencing court. *See, e.g., Tumminello, supra,* 70 *N.J.* at 193 (where the sentencing judge "had before him no medical evidence whatsoever.")

In addition to the requirement of a change of circumstances, among other factors we deem relevant to the determination of a Rule 3:21–10(b)(2) motion are the nature and severity of the crime, the severity of the sentence, the criminal record of the defendant, the risk to the public if the defendant is released, and the defendant's role in bringing about his current state of health.

## IV

As with sentencing, the scope of appellate review of a trial court's decision to grant or deny a Rule 3:21–10(b)(2) motion is whether the trial court abused its discretion. *See State v. Roth,* 95 *N.J.* 334, 364 (1984). We hold that the trial court properly balanced the relevant factors in this case and did not abuse its discretion in denying defendant's release from prison under Rule 3:21–10(b)(2).

Here, there is no dispute about the severity of the defendant's injuries or the daily hardships that he now faces as a result of those injuries. Nor is there any dispute that no change in circumstances contemplated by the Rule has occurred since the original sentencing. The condition of the defendant's health was a critical factor in the State's formulation of its plea bargain and in the trial court's acceptance of that plea.

Moreover, the trial court balanced the defendant's medical condition against a heinous crime, the rape of a fourteen-year-old-girl, the leniency of the sentence imposed in view of the maximum time permissible, and the extensive criminal record of the defendant. The sentencing court, unlike the court in *Tumminello,* was fully cognizant of the defendant's condition. We also find it relevant that defendant's serious injury and resulting illness are the direct result of his own criminal

behavior. Escape from prison is a second-degree crime if the defendant employs force, threat, deadly weapon or other dangerous instrumentality to effect the escape. Otherwise it is a crime of the third degree. *N.J.S.A.* 2C:29–5(d). Moreover, the seriousness of this crime is evidenced by the fact that deadly force may be employed to prevent the escape. *N.J.S.A.* 2C:3–7.

We agree with the trial court that the evidence presented by the defendant—namely, his own certification and physicians' and chaplains' letters—failed to show that his medical condition had seriously deteriorated in prison or that rehabilitation services in prison were unavailable to him. There is sparse evidence on the record that there has been a deterioration in defendant's health since his initial date of sentencing. The defendant submitted into evidence three physicians' letters and two chaplains' letters. None of the physicians' letters was based upon observations made within less than eleven months of defendant's application for reconsideration of sentence. Moreover, those letters merely suggested that defendant was "in need of an intensive rehabilitation program" and "would greatly benefit" from rehabilitative services and that such services would help him "to walk better." It was also suggested that "medical clemency should be allowed if the State of New Jersey's prison system does not have the opportunity for a rehabilitation program in the form of physical therapy." The doctors' letters merely restate defendant's condition and indicate nothing as to the progress of his disability. The only indications that defendant's condition has worsened were supplied through his own certification, the certification of his attorney, and two letters from prison chaplains.

Such evidence clearly does not demonstrate that the defendant's condition had so deteriorated since the date of the original sentence as to warrant clemency under the standards of *Tumminello*. While these letters implicitly suggested that better rehabilitative services were available outside prison, the trial court correctly held that they did not show the devastating

impact on his health resulting from incarceration that is necessary to obtain relief.

The trial court relied on *State v. Stanley,* 149 *N.J.Super.* 326, 329 (App.Div.), certif. den., 75 *N.J.* 21 (1977), in holding that a prisoner's certification and doctors' letters were not sufficient to establish the prisoner's medical condition or the availability of proper medical services at the prison. In *Stanley,* the Appellate Division stated that "where there is any reasonable area of dispute as to the gravity of defendant's physical condition and the unlikelihood of its medical treatment in the prison setting," *id.* at 329, merely introducing letters from physicians is inadequate to support an application for modification of sentence. "The physicians themselves should testify as to the matters within their expertise, thus providing both the prosecutor who resists the application and the judge with the opportunity of fully exploring the pertinent medical facts." *Id.*

In this case, the State also relied on the *Stanley* decision in not introducing evidence to rebut defendant's claims of illness and infirmity warranting release from prison and of insufficient medical services available at the prison.[3] While we recognize that a physician's testimony in many Rule 3:21–10(b)(2) hearings is preferable to letters, it is not necessary in each case. Rather, we leave it to the court's discretion to determine whether such testimony is necessary under the circumstances of the case.

Moreover, we hold that when there exists reasonable dispute as to the availability of proper medical services in prison, the State should submit evidence to the court that medical services are available, for it is the prison officials who are in the best position to introduce that evidence. We recog-

---

[3]The Appellate Division denied the State permission to supplement the appellate record pursuant to *R.* 2:5–5 by submitting an affidavit of the Hospital Administrator of Trenton State Prison outlining Priester's condition, the rehabilitation efforts on his behalf and the conditions of his confinement.

nize as we did with the physician's evidence, *supra*, that while a prison official's testimony would be preferable to a written statement, we hold that it is not necessary in each instance. Rather, we leave it to the court's discretion to determine whether such testimony is necessary or whether an affidavit from such officials would be sufficient to enable the court to make its determination.

We reverse the Appellate Division judgment that there is sufficient evidence in this record to reduce the defendant's sentence pursuant to Rule 3:21–10(b)(2). Neither the defendant nor the State presented any evidence as to the current state of the defendant's health, the medical services available in the prison, or the effect of such services or lack thereof on the prisoner's health. In such a case, we might remand the case to the trial court and request that the defendant and the State produce such additional evidence. We need not decide that question here. Because Priester will be paroled from prison this month, a remand would be moot.

## V

We now turn to the other issue in this appeal—whether a trial court may apply Rule 3:21–10(b)(2) to reduce a prisoner's sentence rather than to suspend it. Here, the Appellate Division reduced Priester's sentence by excising his parole ineligibility term.

The language of Rule 3:21–10(b)(2) speaks only of the release of a prisoner. In *Sanducci, supra*, 167 *N.J.Super.* at 511, the Appellate Division interpreted the Rule to permit only the release of the defendant, and not a reduction or change of sentence. Such a reduction or change of sentence and the relevant time provisions are governed by Rule 3:21–10(a).

The trial court is empowered by *R.* 3:21–10(b)(2) to amend a custodial sentence to permit the release of a defendant because of illness or infirmity. It does not, however, authorize a *reduction* of a defendant's sentence for these reasons without the concurrence of the prosecutor. An application for a reduction or change of sentence by a defendant is governed by and must be

made within the time periods set forth in *R.* 3:21–10(a). The time limitations set forth in this subsection of the rule are to be strictly construed and cannot be relaxed or enlarged. *R.* 1:3–4(c); *State v. Tumminello, supra,* 70 *N.J.* at 191–192, n. 1 ; *State v. Tully,* 148 *N.J.Super.* 558, 563 (App.Div.1977), certif. den. 75 *N.J.* 9 (1977). See also, *Pressler, Current N.J. Court Rules,* Comment to *R.* 3:21–10. [*Id.* 167 N.J.Super. at 511.]

Therefore, *Sanducci* held that it is error to reduce a defendant's custodial sentence once a determination is made that the defendant's state of health does not warrant his immediate release from prison. *Id.* at 511–12; *see also State v. Giorgianni,* 189 *N.J.Super.* 220, 229 (App.Div.), certif. den., 94 *N.J.* 569 (1983).

This holding is supported by the Report of the New Jersey Supreme Court's Committee on Criminal Practice, 98 *N.J.L.J.* 321 (1975). In its discussion of proposed paragraph (b), the Committee noted that:

Rule 3:21–10(b)(2), as proposed, would permit a custodial sentence to be amended to allow the *release* of a defendant because of illness or infirmity of the defendant * * *. Presently only the Governor, by exercise of the pardon power, can at any time *release* an ill or infirm inmate. [*Id.* at 344 (emphasis added).]

This conclusion is further buttressed by the reasoning espoused in the case law that it is only the devastating impact of incarceration on a prisoner's health that permits the application of the Rule. Unless a prisoner's health is so threatened, the Rule should not be applied. It follows that if a court finds that a prisoner may remain in prison, albeit for a reduced term, that prisoner has not been found to be in a situation threatening to his health and the Rule should not be invoked.

Accordingly, we hold that Rule 3:21–10(b)(2) may be applied only to *release* a prisoner from prison but not to reduce or change his sentence. Therefore, we reverse the Appellate Division's judgment to excise Priester's parole ineligibility term pursuant to Rule 3:21–10(b)(2).

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*For affirmance* —None.