# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3875-19T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

L.O.,

    Defendant-Appellant.

_____

Submitted August 25, 2020 –
Decided September 8, 2020

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 88-01-0265.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele Erica Friedman, Assistant Deputy Public Defender, of counsel and on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Edward F. Ray, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant L.O.[1] is incarcerated at South Woods State Prison. He appeals from a June 19, 2020 order denying his motion for a change in custody pursuant to Rule 3:21-10(b)(2). For the reasons that follow, we affirm.

Defendant is serving a life sentence for a gruesome homicide he committed in 1987. In the course of committing a residential burglary he encountered the victim, a ninety-two-year-old woman, and viciously beat her with his fists; dragged her down a flight of steps fracturing two of her vertebrae; stuffed her head in a plastic bag; and partially placed her into a furnace. Her nude body was found two days later by police.

In 1988, defendant was convicted by a jury of first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2) and felony murder, N.J.S.A. 2C:11-3(a)(3). The trial court found the aggravating factors were "serious and overwhelming." Defendant was sentenced to life with a thirty-year period of parole ineligibility on the murder count and a concurrent thirty-year term on the felony murder count. We affirmed his conviction and sentence for murder but merged his conviction for felony murder. State v. [L.O.], No. A-2274-88 (App. Div. May 17, 1991).

---

[1] We refer to the defendant by initials to protect his privacy due to his medical condition. N.J.S.A. 26:5C-7; R. 1:38-3(f)(7).

This was not defendant's first criminal conviction. His record includes several prior burglary and larceny convictions that resulted in prison sentences and an extensive history of adjudications for juvenile delinquency, twice resulting in confinement at the Youth Correctional Facility at Yardville. He was unsuccessful as a juvenile parolee and as an adult probationer and parolee.

Defendant has committed multiple disciplinary infractions while imprisoned. In 2009, he was disciplined for assaulting a corrections officer and disrupting the security or orderly running of the prison, and received fifteen days of detention, 365 days of administrative segregation, and 365 days of loss of commutation credits. We affirmed that decision. [L.O.] v. Dep't of Corr., No. A-5427-08 (App. Div. July 19, 2010).

In October 2017, a State Parole Board panel determined there was a substantial likelihood that defendant would commit a new crime if released and denied parole. The record does not indicate if he appealed that decision. Defendant is now seventy-two years old and is next eligible for parole in late 2025.[2]

---

[2] We note that on April 10, 2020, the Governor issued Executive Order 124, which created a mechanism to identify inmates in state prison to be considered for parole or medical furlough who are at least sixty years old; have an underlying medical condition that increases their risk of death or serious injury

On June 4, 2020, defendant moved for release from prison pursuant to Rule 3:21-10(b)(2). He argues that his HIV-positive[3] status, alleged weakened immune system, chronic kidney disease, and advanced age, puts him "at risk of severe complications, and even death, if he contracts COVID-19" as a result of "the close quarters of prison without a means to properly social distance." Notably, defendant is not on HIV medication and is currently HIV-undetectable. Defendant's medical reports note that he appears to be in "no acute distress" and describe him as "clinically stable" with his chronic illness in "[g]ood control."

In support of his motion, defendant submitted certain prison medical records prepared in 2019 and 2020. He also submitted certifications of five physicians that discuss the enhanced risk COVID-19 poses to prison inmates.

---

from COVID-19; who were denied parole within the last year; whose sentence will end within ninety days; or who will be eligible for parole within ninety days. Exec. Order No. 124 (Apr. 10, 2020), 52 N.J.R. 963(a) (May 4, 2020). Defendant clearly does not meet the last three of those criteria.

[3] "'HIV' means the human immunodeficiency virus or any other related virus identified as a probable causative agent of AIDS." N.J.S.A. 26:5C-15. "'HIV-positive' means having a positive reaction on a 'HIV related test' used to detect 'any virus, antibody, antigen or etiologic agent thought to cause or to indicate the presence of AIDS.'" Smith v. Datla, 451 N.J. Super. 82, 87 n.1 (App. Div. 2017) (quoting N.J.S.A. 26:5C-5). "'HIV-positive' refers to an individual infected with HIV but not yet having AIDS." Ibid. HIV is the infection and AIDS is the manifestation of the disease. Troum v. Newark Beth Israel Med. Ctr., 338 N.J. Super. 1, 6, 10, 14 (App. Div. 2001).

Notably, none of the certifications are specific to defendant. They do not analyze his medical condition, treatment history, or test results. Nor do they analyze the housing or medical treatment of inmates at South Woods State Prison or any other correctional facility operated by the Department of Corrections. Instead, they are generic.[4]

Presiding Judge Margaret M. Foti denied the motion. In her written statement of reasons, the judge recounted defendant's prior record, the violent manner in which the victim was murdered, and the sentencing judge's comments regarding the cruelty and heinousness of defendant's crimes. After applying the pertinent factors, the judge concluded that "concerns for public safety substantially outweigh any potential risk to defendant's health." In reaching that conclusion the judge engaged in the following analysis:

---

[4] Defendant also submitted a published 2014 article on the level of innate immune responses of HIV-1 treated patients with undetectable viral loads compared with healthy uninfected subjects. Sanjay Swaminathan et al., HIV-1 Treated Patients with Undetectable Viral Loads have Lower Levels of Innate Immune Responses via Cytosolic DNA Sensing Systems Compared with Healthy Uninfected Controls, J. AIDS Clinical Res. 1 (June 10, 2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4444065/pdf/nihms624682.pdf. Notably, the test subjects in the study compared healthy uninfected individuals to HIV-positive patients receiving "combination antiretroviral therapy." Ibid. As we have mentioned, defendant does not take any HIV medication yet remains HIV-undetectable.

> The court recognizes that the [COVID]-19 pandemic constitutes a change of circumstance, and defendant's age and chronic illness are risk factors if he contracts the disease.
>
> Even though individuals [sixty] years of age or older are at risk for [COVID]-19, defendant's medical records reflect that defendant is in good health. A review of defendant's medical records demonstrate[s] that defendant is HIV-positive-undetectable and has chronic kidney illness. While there is no question HIV can be a serious disease, defendant's medical records suggest that he has been properly treated while incarcerated. Those records reveal that defendant is well nourished, well hydrated, and has no acute distress. The records further reveal that on March 23, 2020, defendant was described as clinically stable and his chronic illness was in "good control." There is nothing in the records that would suggest that defendant has not or cannot be properly treated within the facility. The court also takes judicial notice of the New Jersey State Prison website which details precautions being taken by State officials to protect inmates and staff from [COVID]-19 in accordance with CDC guidelines.
>
> [(Footnote omitted).]

The judge also considered the reasons defendant was denied parole in 2017 and found that "[d]efendant's refusal to take responsibility for his criminal behavior, coupled with his refusal to address his substance abuse issues, makes defendant a risk to society."

This appeal followed. Defendant raises a single point for our consideration:

6

> THE TRIAL COURT COMMITTED REVERSIBLE
> ERROR IN DENYING [DEFENDANT'S] RULE 3:21-
> 10(b)(2) MOTION.

We affirm substantially for the reasons expressed by Judge Foti in her cogent written decision. We add the following comments.

Pursuant to N.J.R.E. 201(b)(3), defendant contends we should take judicial notice of "statistics, information, and recommendations released by public health agencies and organizations," citing J.H. v. R&M Tagliareni, LLC, 239 N.J. 198, 226 n.2 (2019) (Rabner, C.J., dissenting).

Defendant asserts that the CDC "has acknowledged that custodial settings 'present[] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors'" due to "the close proximity of incarcerated persons within facilities; the potential introduction of the virus on a daily basis through staff entering and exiting the facility; and the movement of persons between facilities and to outside medical providers." He states that as of June 29, 2020, the Department of Corrections reported 781 employee COVID-19 cases, 2650 inmate cases, and 45 inmate deaths.[5]

---

[5] "As of June 1, 2020, out of a total population of 15,302 inmates in state prison, 1720 had tested positive for the virus, about 192 had been hospitalized, and 46 had died." In re Request to Modify Prison Sentences, Expedite Parole Hearings, and Identify Vulnerable Prisoners, ___ N.J. ___, ___ (2020) (slip op. at 2).

Rule 3:21-10(b)(2) provides: "A motion may be filed and an order may be entered at any time . . . amending a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant." Courts apply a balancing test to determine relief should be granted under the rule. State v. Priester, 99 N.J. 123, 135 (1985).

Generally, to obtain such "extraordinary relief" under the rule, a defendant must show: (1) he suffers from a serious medical condition and the negative impact incarceration has on his health; and (2) a change in circumstances between the time of sentencing and the motion. Id. at 135-36. When determining whether release is appropriate under the rule, courts should consider "the nature and severity of the crime, the severity of the sentence, the criminal record of the defendant, the risk to the public if the defendant is released, and the defendant's role in bringing about his current state of health." Id. at 137. The court should also consider "the availability of medical services in prison." Id. at 135. The nature of the inmate's illness and the effect of continued incarceration on his health are the "predicate for relief." Id. at 136.

Recently, our Supreme Court held that in the context of the COVID-19 pandemic, an inmate seeking relief under the rule must present "evidence of both an 'illness or infirmity' -- a physical ailment or weakness -- and the increased

risk of harm incarceration poses to that condition. A generalized fear of contracting an illness is not enough." Request to Modify Prison Sentences, ___ N.J. ___ (slip op. at 20-21). The Court further held that the COVID-19 pandemic constitutes "a change in circumstances under" Rule 3:21-10(b)(2). Id. at 21. The Court noted, however, that the rule does not "provide authority for the courts to establish and oversee a broad-based program to release or furlough inmates in state prison." Id. at 5.

"A motion made pursuant to Rule 3:21-10(b)(2) is committed to the sound discretion of the court." Priester, 99 N.J. at 135 (citing State v. Tumminello, 70 N.J. 187, 193 (1976)). We review decisions granting or denying relief under the rule for abuse of that discretion. Id. at 137. An abuse of discretion "arises when a decision is made without a rational explanation," "rested on an impermissible basis" or was "based upon a consideration of irrelevant or inappropriate factors." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (citations omitted).

In its decision, the Parole Board panel set forth numerous reasons for denying defendant parole, including: the facts and circumstances of the murder; defendant's extensive criminal record; the escalation of defendant's criminal behavior; prior opportunities on probation and parole were unsuccessful; prior incarceration did not deter criminal behavior; numerous, persistent institutional

infractions that were serious in nature; insufficient problem resolution; and defendant's risk assessment evaluation. The insufficient problem resolution finding was based on defendant's lack of insight into his criminal behavior, denial of the murder, minimizing his conduct, insufficiently addressed substance abuse problem, and blaming others for the circumstances he is in.

Judge Foti balanced defendant's medical condition and age against the heinous crime he committed—the brutal murder of an elderly woman—his extensive criminal record, and his high risk of recidivism if released. She considered and weighed each of the pertinent factors and concluded "that the risk of danger posed by defendant to society far outweighs any risk this defendant faces in State prison." She also appropriately considered the reasons defendant was denied parole.

We hold that the judge properly balanced the relevant factors and did not abuse her discretion in denying defendant's release from prison under Rule 3:21-10(b)(2). With but a single exception, her findings are amply supported by the record.[6] We discern no basis to overturn her decision.

---

[6] The judge stated that "defendant's medical records reflect that defendant is in good health." While we would not describe defendant as being in good health given his medical conditions, we agree that his medical records indicate that defendant is "well nourished, well hydrated, and has no acute distress."

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

Moreover, as of March 23, 2020, defendant was described as "clinically stable" with his chronic illnesses in "good control." He is not prescribed any medications for his HIV-positive status. We further agree with the conclusion that there is nothing in defendant's medical records "that would suggest that defendant has not or cannot be properly treated within the facility."

11                                                                    A-3875-19T4