**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4633-19T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RAHEIM M. SUMMERS,

     Defendant-Appellant.

_____

Argued October 27, 2020 – Decided November 10, 2020

Before Judges Gilson and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 95-06-2284.

Joseph E. Krakora, Public Defender, attorney for appellant (Scott M. Welfel, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Raheim M. Summers appeals from the order denying his motion under Rule 3:21-10(b)(2) to amend his aggregate prison sentence of thirty years with thirty years of parole ineligibility imposed in 1996 for first-degree murder, N.J.S.A. 2C:11-3(a),[1] arguing:

> POINT I
>
> THE [MOTION JUDGE] ERRED IN DENYING DEFENDANT'S RULE 3:21-10(B)(2) MOTION BECAUSE IT FAILED TO APPLY THE APPROPRIATE ANALYTICAL FRAMEWORK AND ERRONEOUSLY HELD THAT A MANDATORY PAROLE DISQUALIFIER PRECLUDES MEDICAL RELEASE.
>
> > A.    The [Judge] Erred In Failing To Properly Analyze "The Increased Risk of Harm Incarceration Poses To An Inmate's Condition," Which Requires Weighing The Increased Risk Of Death Or Serious Illness From COVID-19 Posed By The Inmate's Underlying Medical Conditions Against The DOC's Precautionary Measures To Prevent The Inmate From Contracting COVID-19

---

[1] Defendant was found guilty by jury of all indicted charges. The judgment of conviction references N.J.S.A. 2C:11-3(a)(1) and N.J.S.A. 2C:11-3(a)(2), as the original murder charges, and N.J.S.A. 2C:11-3(a) as the final charge. Neither the indictment nor the verdict sheet was provided in the appellate record, so we cannot determine the subsections under which the jury found defendant guilty on that count. Second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three), was merged into the murder count, and defendant was sentenced to a concurrent three-year term for third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count two).

A-4633-19T4

### B. The [Judge] Erred In Concluding That A Mandatory Parole Disqualifier Precludes Relief Under Rule 3:21-10(b)(2).

Recognizing relief under Rule 3:21-10(b)(2) "must be applied prudently, sparingly[] and cautiously," State v. Priester, 99 N.J. 123, 135 (1985), we discern no abuse of discretion in Judge Mayra V. Tarantino's substantive ruling, id. at 137; see also State v. Tumminello, 70 N.J. 187, 192-93 (1976), and agree with her procedural application of the law which we review de novo, State v. Robinson, 217 N.J. 594, 603-04 (2014). Accordingly, we affirm.

Judge Tarantino did not conduct an evidentiary hearing but did consider 1195 pages of documents filed by defendant in support of the motion that allowed her to assess whether defendant met his burden. To further his Rule 3:21-10(b)(2) motion, defendant was required to first demonstrate a change of circumstances resulting in a severe depreciation of his health since sentence was imposed. Priester, 99 N.J. at 136-37. If defendant made that predicate showing, the motion judge was compelled to

> weigh various factors that affect the decision whether to grant a release such as, the nature and severity of the crime for which he is imprisoned, his criminal record, the risk that might result to the public by his release, . . . the nature of th[e] illness and the availability of appropriate medical services in prison to adequately treat or cope with that illness.

A-4633-19T4

> [State v. Wright, 221 N.J. Super. 123, 127 (App. Div.
> 1987).]

Defendant also had to establish "that the medical services unavailable at the prison would be not only beneficial . . . but are essential to prevent further deterioration in his health." Priester, 99 N.J. at 135.

Judge Tarantino acknowledged the Supreme Court's recent holding that the COVID-19 pandemic established a change of circumstances under Rule 3:21-10(b)(2). See In re Request to Modify Prison Sentences, Expedite Parole Hearings, & Identify Vulnerable Prisoners, 242 N.J. 357, 379 (2020).

The judge also acknowledged the medical issues advanced by defendant: "moderate obstructive sleep apnea requiring use of a CPAP machine, hypertension, and hyperlipidemia, a specific type of hypercholesterolemia." And, the judge's thorough review of defendant's five confidential appendices led to her comprehensive delineation of his additional medical conditions starting from July 2000: gastroesophageal reflux disease, irritable bowel syndrome, plantar fasciitis, astigmatism, allergic rhinitis, shoulder strain, lump or mass in breast, PPD conver[sion], dyspepsia and benign prostatic hypertrophy. But the judge found the general listing of defendant's diagnoses did "little to inform [the judge] of the seriousness of his illnesses and their relation to whether release

4

from custody is warranted." Instead, the judge found that defendant failed to show incarceration was having a deleterious impact on his health. The judge pointed to the voluminous medical and dental records defendant submitted and found they signaled defendant's "condition has been stable and he has been receiving appropriate and effective medical treatment while incarcerated," even noting he was provided a heart-healthy, low-sodium diet in response to his health conditions.

"To prevail on a [Rule 3:21-10(b)(2)] motion, inmates must . . . present evidence of both an 'illness or infirmity' – a physical ailment or weakness – and the increased risk of harm incarceration poses to that condition." In re Request to Modify Prison Sentences, 242 N.J. at 379. Defendant failed to meet the latter requirement. Unlike the defendant in Tumminello, whose worsening diabetes mellitus necessitated multiple amputations and who was unable to maintain the sanitary conditions in prison necessary to avoid ulcerations, infections and further amputations, 70 N.J. at 190-91, defendant has not established that continued imprisonment would cause his alleged underlying conditions to deteriorate or that the Department of Corrections (DOC) is unable to address his medical needs.

Judge Tarantino correctly analyzed the applicable factors in concluding defendant failed to show that continued incarceration would have a deleterious effect on his health, see Wright, 221 N.J. Super. at 130 (rejecting inmate's argument for release because he provided no evidence that confinement would exacerbate his AIDS symptoms), and in following the Court's clear direction: "A generalized fear of contracting an illness is not enough," In re Request to Modify Prison Sentences, 242 N.J. at 379, which, contrary to defendant's argument, does not apply only to those prisoners without preexisting conditions. Further, the judge considered the DOC's extensive plans for COVID-19 mitigation and for response in the event a prisoner was exposed to, tested positive for, or showed symptoms of COVID-19. She found the medical services were available through the DOC to adequately treat or cope with defendant's current conditions. But that factor is of limited relevance because it "is important only insofar as it tends to establish that without such medical services the defendant's condition will seriously worsen or deteriorate in prison." Priester, 99 N.J. at 135. Defendant is not in need of any COVID-19 related services because he has not contracted the virus.

The judge also properly considered that defendant was sentenced for a "deliberate and reprehensible" murder, supporting her finding that there is a need

6

to protect the public, notwithstanding it was defendant's only conviction and evidence of defendant's rehabilitative efforts by completing institutional programs.

Judge Tarantino weighed the evidence presented and analyzed all applicable legal tenets in determining defendant did not meet the standard required for relief under Rule 3:21-10(b)(2). We conclude, based on the judge's thoughtful and thorough analysis, she did not abuse her discretion.

We also reject defendant's challenge to the judge's determination that defendant was not entitled to relief under the Rule because he had not yet completed the parole-ineligibility period to which he was sentenced. Our holding in State v. Mendel was not limited to the Rule under which that defendant's "application for change or reduction of sentence" was made, specifically Rule 3:21-10(b)(1). 212 N.J. Super. 110, 112 (App. Div. 1986). We recognized a legislative mandate that a defendant serve a mandatory period of parole ineligibility precludes a change or reduction of sentence under any of the exceptions set forth in Rule 3:21-10(b). Id. at 113.

We are not persuaded by defendant's argument that our Supreme Court's holding in Priester disassociates applications under Rule 3:21-10(b)(2) from our holding in Mendel. The Court in Priester reversed our decision to eliminate that

defendant's period of parole ineligibility, id. at 141, and held that although Rule 3:20-10(b)(2) allows release of a prisoner to treat a serious condition that is devastatingly impacted by his incarceration, see id. at 135, it does not allow any reduction of that defendant's sentence, including a parole-ineligibility period, id. at 141.

Priester did not impact our decision in Mendel, handed down over a year later. In Mendel, we recognized the "distinction between an ineligibility term required by statute and one imposed as a matter of discretion by the court." 212 N.J. Super. at 112. Though the Court in Priester ruled "Rule 3:21-10(b)(2) may be applied only to release a prisoner from prison," it also held a sentence could not be reduced or changed. 99 N.J. at 141. Our decision not only followed the mandate that sentences not be reduced or changed,[2] it recognized a prisoner could not be released if the Legislature's mandatory sentencing requirements were circumvented. See Pressler & Verniero, cmt. 2.2 on R. 3:21-10.

Although we need not address the issue in light of our affirmance of the substantive reasons for denying defendant's application, we agree that,

---

[2] We cited Priester in noting "R[ule] 3:21-10(b)(2) was designed to permit discharge or transfer of prisoners, and an application may not be brought under that rule to otherwise reduce the sentence or ineligibility term." Mendel, 212 N.J. Super at 114 n.3.

procedurally, the mandatory period of parole ineligibility precludes relief under Rule 3:22-10(b)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION