# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0112-20T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

G.E.P.,

     Defendant-Appellant.

_____

          Argued January 13, 2021 – Decided February 2, 2021

          Before Judges Accurso and Vernoia.

          On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 11-02-0138.

          Anne M. Collart argued the cause for appellant (Gibbons P.C., attorneys; Lawrence S. Lustberg and Anne M. Collart, on the briefs).

          Paula Jordao, Special Deputy Attorney General/Acting Chief Assistant Prosecutor, argued the cause for respondent (Robert J. Carroll, Acting Morris County Prosecutor, attorney; John McNamara, Jr., of counsel and on the brief).

PER CURIAM

Defendant G.E.P. appeals from an order denying his Rule 3:21-10(b)(2) motion to amend the aggregate thirty-year prison sentence imposed for his convictions for six counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), and seven counts of second-degree aggravated sexual assault, N.J.S.A. 2C:14-2(b).[1]  Defendant requested an amendment of his sentence—release from custody—because prison presents a heightened risk for contracting the COVID-19 virus, and because his medical conditions—including cardiac issues and other ailments—present an increased "risk of serious illness or death" if he contracts the virus.[2]  In a thorough and well-reasoned written decision, Judge Stephen J. Taylor denied defendant's motion.  We affirm.

---

[1]  We use initials to preserve the confidentiality of these proceedings.  See R. 1:38-3(c)(9) and (12).

[2]  We describe the relief sought in defendant's motion based on the court's decision and the briefs on appeal.  The record on appeal does not include the notice of motion filed with the court, and neither the briefs on appeal nor defendant's appendix identify the precise record that was presented to the motion court.  We note that the court's written decision denying defendant's motion refers to "voluminous 'Inmate Progress Notes Reports'" and a "supplemental filing" by the State detailing steps taken by the New Jersey Department of Corrections to control the spread of the COVID-19 virus, but none of these documents is included in the record on appeal.  See generally R. 2:6-1(a)(1)(B) and (I) (requiring that the record on appeal include "all docket entries in the proceedings" before the trial court and "such other parts of the record . . . as are essential to the proper consideration of the issues").

A-0112-20T4

Following his July 2015 convictions, the court remanded defendant to custody and sentenced him to an aggregate thirty-year custodial term.[3] Four years later, we reversed defendant's conviction and remanded for a new trial, State v. G.E.P., 458 N.J. Super. 436, 465 (App. Div. 2019), and defendant was released on bail. The following year, the Supreme Court reinstated defendant's convictions and sentence, State v. G.E.P., 243 N.J. 362, 393 (2020), and defendant was ordered to return to custody.

Prior to his return to custody, defendant moved under Rule 3:21-10(b)(2) to amend his sentence to permit his release from the remaining custodial portion of his sentence. He also claimed the court had the inherent authority independent of the Rule to modify his sentence to allow for home confinement with restrictions. Defendant asserted the requested relief was warranted because he had aortic valve replacement surgery prior to his 2015 trial; he has a permanent pacemaker; and he suffers from a mild thoracic aneurysm, hypertension, hyperlipidemia, and carotid stenosis. He claimed that due to his medical conditions and age—sixty-three—and the heightened risk of exposure

---

[3] Defendant is not subject to the requirements of the No Early Release Act, N.J.S.A. 2C:43-7.2. He was convicted of crimes committed prior to the statute's enactment in 1997. See L. 1997, c. 117.

to the COVID-19 virus under the conditions in prison, his incarceration "could prove life-threatening."

After hearing argument, Judge Taylor entered an order denying the motion and, in a comprehensive written opinion, made detailed findings of fact and conclusions of law supporting his decision. The court ordered that defendant return to custody on August 28, 2020, and it subsequently denied defendant's motion for a stay of the order. We denied defendant's application to file an emergent motion challenging the denial of the stay. This appeal from the order denying defendant's motion for an amendment of his sentence followed.

Defendant presents the following arguments for our consideration:

> POINT I
>
> THE TRIAL COURT FUNDAMENTALLY MISUNDERSTOOD AND MISAPPLIED THE SUPREME COURT'S DECISION [IN THE MATTER OF THE] REQUEST TO MODIFY PRISON SENTENCES, 242 N.J. 357 (2020), AS WELL AS OTHER GOVERNING PRECEDENT, IN DENYING [DEFENDANT'S] RULE 3:21-10[(b)](2) MOTION.
>
> A. The trial court ignored the "amplified" risk presented by the novel coronavirus to individuals with underlying conditions in the prison setting that underpins Request to Modify Prison Sentences.
>
> B. The trial court failed to meaningfully consider all of the Priester factors and ignored the requirement in Wright to examine whether continued confinement

would exacerbate or hasten the progression of his disease.

C. The trial court's dismissal of [defendant's] proffered evidence of rehabilitation contravenes the legal requirement that such post-offense conduct be taken into consideration when evaluating a defendant's sentence.

POINT II

THE TRIAL COURT WAS INCORRECT IN HOLDING THAT IT LACKED THE AUTHORITY TO POSTPONE [DEFENDANT'S] SURRENDER IN ORDER TO ASSURE HIS SAFETY.

Rule 3:21-10(b)(2) provides for the grant of "extraordinary relief"—release from "a custodial sentence . . . because of illness or infirmity of the defendant." In the Matter of the Request to Modify Prison Sentences, 242 N.J. 357, 378 (2020) (first quoting State v. Priester, 99 N.J. 123, 135 (1985); and then quoting Rule 3:21-10(b)(2)). A motion for relief under the Rule "is committed to the sound discretion of the court." Priester, 99 N.J. at 135.

"The predicate for relief under the Rule is proof of the serious nature of the defendant's illness and the deleterious effect of incarceration on the prisoner's health." Ibid. A defendant seeking relief under the Rule must also establish the medical services that are "unavailable at the prison would be not only beneficial[,] . . . but are essential to prevent further deterioration in [the

A-0112-20T4

defendant's] health." Ibid. A defendant must further demonstrate "changed circumstances in his [or her] health . . . since the time of the original sentence." Id. at 136.

In deciding a motion under the Rule, a court must consider and balance the factors established by the Court in Priester and reaffirmed in Request to Modify Prison Sentences, 242 N.J. at 378-79, including the "nature and severity of the crime, the severity of the sentence, the criminal record of the defendant, the risk to the public if the defendant is released, and the defendant's role in bringing about his [or her] current state of health," Priester, 99 N.J. at 137. We will not reverse a decision denying relief under Rule 3:21-10(b)(2) unless it is shown to be a mistaken exercise of discretion. Ibid.

We discern no abuse of discretion in Judge Taylor's consideration and weighing of the Priester factors, and we affirm substantially for the reasons set forth in his detailed written decision. In the first instance, the judge recognized the COVID-19 pandemic constitutes a change in circumstances permitting an inmate with serious medical issues to apply for relief under Rule 3:21-10(b)(2). See Request to Modify Prison Sentences, 242 N.J. at 379 (explaining the COVID-19 pandemic "amounts to a change in circumstances under" Rule 3:21-10(b)(2)).

Judge Taylor also made findings concerning the illness and infirmity defendant relied on to support his request for relief. The court found defendant "has a 'past medical history of an aortic valve replacement that appears to be degenerating,'" and defendant has "a mild thoracic aneurysm, [a] permanent pacemaker for heart block, HTN, hyperlipidemia, and carotid stenosis."[4] Judge Taylor noted, however, that the doctor who reported defendant suffered from those conditions also stated defendant was "asymptomatic." Based on a report from a second doctor who had seen defendant on one occasion eleven months prior to the filing of the motion, Judge Taylor also found it was necessary to check defendant's pacemaker—which was implanted in 2017—every thirteen weeks unless there was a problem, but that defendant "has not presented such a problem."

The court found defendant did not present any evidence his incarceration prior to his release in 2019 had a deleterious effect on his health. The court also found defendant's doctors did not report any problems with the pacemaker and that there was no evidence the New Jersey Department of Corrections was incapable of providing the medical services necessary to monitor the operation

---

[4] "HTN" is not described or defined in the doctor's letter or report or in the court's opinion.

A-0112-20T4

of the pacemaker. Judge Taylor rejected defendant's claim that his "serious and deteriorating heart condition requires intensive medical supervision," noting the doctors' reports submitted in support of the motion did not support the claim. Judge Taylor explained that although the evidence established defendant required medical care, the record lacked any evidence "that immediate intervention is necessary or that medical services at the prison, or outside hospitals contracted with the Department of Corrections, are unable to sufficiently address" defendant's medical issues. The court found defendant failed to demonstrate that his "heart condition alone" warranted the requested amendment of his sentence—release from custody.

On appeal, defendant argues the court erred by analyzing defendant's medical conditions under the Priester factors because it failed to properly consider the amplified risk COVID-19 presents to individuals with underlying conditions. The argument ignores that defendant argued before the motion court that his various medical conditions alone were so dire that he was entitled to relief under Rule 3:21-10(b)(2). Thus, the court's opinion properly addressed that specific claim without regard to the increased risks presented by the pandemic because defendant argued, at least in part, that his medical conditions alone, without regard to COVID-19, required an amendment of his sentence

permitting his release from custody. Defendant does not challenge the court's rejection of that claim, and we need not address it further. See Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (noting that an issue not briefed on appeal is deemed waived).

Defendant argues the court failed to address the risks to his health posed by his incarceration during the pandemic. He contends Judge Taylor did not consider the amplified risks COVID-19 poses to inmates in a prison setting, and that the judge incorrectly analyzed defendant's medical conditions in isolation. See Request to Modify Prison Sentences, 242 N.J. at 370 (noting "the risks COVID-19 poses . . . are amplified in jail settings"). The argument finds no support in the record.

Judge Taylor found that a report submitted by one of defendant's doctors, and the guidelines from the Center for Disease Control, support defendant's argument that "his serious heart condition renders him more susceptible to serious complications should he contract COVID-19." The court, however, rejected defendant's claim that it was "extremely likely" he would contract the virus in prison, noting defendant's doctor reported that defendant "is not at an increased risk of contracting COVID-19" due to his existing medical issues. In addition, the court detailed the Department of Corrections' implementation of

"significant mitigation tactics and universal testing of staff and inmates to control the spread of COVID-19 in State prisons."[5]

Contrary to defendant's contention, Judge Taylor did not ignore the amplified risks of complications defendant faces as a result of COVID-19 in a prison setting. As required by the Court in Request to Modify Prison Sentences, 242 N.J. at 378-79, Judge Taylor applied and weighed the Priester factors, and he determined the amplified risks posed by COVID-19 in a prison setting are in part outweighed by the actions taken by the Department of Corrections to mitigate each inmate's risk of contracting the virus. The court found the evidence undermined defendant's claim his medical conditions made him more susceptible to contracting COVID-19, and that defendant's "generalized fear of contracting an illness [was] not enough" to warrant relief under Rule 3:21-10(b)(2). Id. at 379. We find no error in the court's weighing of the amplified risk of complications presented by the virus against the Department of Corrections' actions to mitigate those risks in our State prisons. The court's findings are supported by the evidence.

---

[5] At oral argument on the appeal, defendant's counsel explained that it is anticipated defendant will receive the COVID-19 vaccine within a few weeks as part of the State's COVID-19 mitigation plan. That fact was not before the motion court and we do not consider it in our determination of defendant's appeal.

Moreover, the court's analysis of the <u>Priester</u> factors did not end with its findings concerning the risks posed by COVID-19 and the Department of Corrections' substantial efforts to mitigate those risks. As required by the Court in <u>Request to Modify Prison Sentences</u>, 242 N.J. at 378-79, Judge Taylor further considered and balanced the other <u>Priester</u> factors, including "the nature and severity of the crime, the severity of the sentence, the criminal record of the defendant, the risk to the public if the defendant is released, and the defendant's role in bringing about his current state of health," <u>Priester</u>, 99 N.J. at 137.

The court made detailed findings concerning those factors and concluded that even if defendant satisfied the <u>Priester</u> standard of establishing he suffered from a serious illness and that continued incarceration would have a deleterious effect on his health, the remaining factors weighed against his request for a release from custody. More particularly, the court explained that defendant was convicted of numerous counts of first-degree aggravated sexual assault and second-degree sexual assault on the victim. The assaults began when the victim was eight years old, continued over a significant period until she was fifteen or sixteen, and occurred while defendant served as a guardian to the victim.

In addition to the heinousness and severity of defendant's long-term victimization of the child, the court further noted the severity of the sentence

11

weighed heavily against his release. Defendant received an aggregate thirty-year custodial term that included consecutive sentences, but he had served only three years and eight months prior to the filing of his Rule 3:21-10(b)(2) motion for release from custody. Judge Taylor also noted defendant was three years away from his first eligibility for parole.

The court considered the risk to the public if defendant is released, and also that defendant had been released on bail for about a year following the reversal of his conviction. Judge Taylor rejected defendant's claim he did not pose a risk to the public because his crimes had been committed many years earlier.

The court noted that during a recorded 2009 telephone call with the victim, defendant said he still "revel[ed]" in his sexual interactions with her. Defendant told the victim, "It's awful how much I miss it"; "I look at it with a joy"; "I look at it as one of the best things in my life"; and "I really do feel like it was an amazing gift." Defendant also told the victim that his sexual experiences with her, which began when she was eight years old, were "like the best chocolate ice cream in the world, and you'll never find another flavor quite like that, you know? That's how I feel about it."

12

Judge Taylor found that the statements "were made in 2009, significantly after the underlying incidents" of sexual assault, and that they did not demonstrate any remorse or regret. The court also observed that defendant had not received any sex offender specific therapy as recommended by the Adult Diagnostic and Treatment Center (ADTC) when he was sentenced.[6] The court concluded that although defendant had no other criminal record, the nature of his offenses, his joy and revel in the crimes, and his lack of recommended sex offender specific therapy rendered defendant a significant risk to the safety of the community if his custodial sentence was amended to permit his release.

---

[6] We reject defendant's claim the court did not consider his efforts at rehabilitation when it considered the Rule 3:21-10(b)(2) motion. Judge Taylor directly addressed the issue of defendant's rehabilitation by finding defendant failed to participate in sex offender specific training as recommended by the ADTC. Defendant asserts the court failed to consider that he did not commit offenses while released on bail following the reversal of his conviction and that he attended religious classes while incarcerated. He claims those facts evidenced his rehabilitation. The evidence in the record concerning the religious classes consists only of a list of seven "religious" workshops and study "sessions" defendant attended during almost four years of incarceration. There is no evidence concerning the content of the sessions or whether his participation in those sessions may have aided his purported rehabilitation. Additionally, in his weighing of the Priester factors, Judge Taylor did consider that defendant had no other criminal record and that he had not committed any offenses while on bail. As noted, however, the court determined that a weighing of the Priester factors did not permit an amendment of defendant's sentence to permit his release from custody.

A-0112-20T4

We find no error in the court's determination. Defendant committed very serious sexual offenses over a long period of time against a young child over whom he served as a guardian. His statements to the victim, long after the crimes were committed, demonstrate that defendant fails to recognize or understand that what he perceives as a "joy" and a "gift," and what he views "as one of the best things in [his] life," actually constituted a long and unrelenting course of aggravated sexual assault on a young child.

Judge Taylor placed great weight on defendant's threat to the community in his balancing of the Priester factors. The court's findings concerning the severity of defendant's crimes and sentence, and the risk defendant poses to the safety of the community if released, are supported by the evidence. The findings also support Judge Taylor's well-reasoned balancing of the Priester factors. The court provided a rational explanation for its findings and determination, did not depart from any established policies or legal principles, and did not rest its decision on an impermissible basis. See United States v. Scurry, 193 N.J. 492, 504 (2008) (finding a court abuses its discretion when its "decision [is] made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis" (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002))). We find no basis to conclude Judge Taylor abused

his discretion in denying defendant's motion to amend his sentence under Rule 3:21-10(b)(2).

Defendant also contends the court erred by finding that, independent of Rule 3:21-10(b)(2), it lacked the inherent authority to fashion a remedy, such as a modification of defendant's sentence to permit home confinement or a medical furlough, based on the circumstances presented. We need not explore the extent of a court's authority to fashion a remedy for an inmate who suffers from an illness or infirmity because defendant's argument is founded on a misinterpretation of the court's opinion.

The court's statement that it lacked the authority to delay continuation of defendant's custodial sentence was made in the context of its finding that defendant's motion sought what was tantamount to the medical furlough granted by the court in State v. Boone, 262 N.J. Super. 220, 222-24 (Law Div. 1992). Judge Taylor simply found he lacked the authority to grant the type of medical furlough awarded in Boone under the circumstances presented by defendant's application because, unlike the defendant in Boone, defendant is not suffering from a life threatening illness the treatment for which is available only in an out-of-state medical facility. Cf. id. at 222. As Judge Taylor correctly observed, the Court in Request to Modify Prison Sentences explained that Boone "does

not afford a basis for a broad-based judicial furlough process." 242 N.J. at 378. We agree with Judge Taylor that defendant's application does not present circumstances similar to those presented by the defendant in <u>Boone</u>, and, for the reasons set forth in the court's written opinion, defendant is not entitled to the extraordinary relief he requests. <u>See</u> <u>Boone</u>, 262 N.J. Super. at 223-24 (explaining the grant of a "judicial furlough" as an exercise of a court's "inherent authority to act to preserve life" is a "power [that] should be sparingly utilized in the very rarest of cases").

Defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0112-20T4