STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
EDWARD TUMMINELLO, DEFENDANT-APPELLANT.

Argued January 12, 1976—Decided May 12, 1976.

*Mr. Martin L. Greenberg* argued the cause for appellant (*Messrs. Greenberg and Margolis,* attorneys; *Mr. Greenberg* of counsel; *Mr. Stephen N. Dratch,* on the brief).

*Mr. William Welaj,* Deputy Attorney General argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Welaj,* of counsel and on the brief).

The opinion of the Court was delivered by

CLIFFORD, J. Defendant was convicted of conspiracy to make and take book contrary to *N. J. S. A.* 2A:98–1. He was sentenced to New Jersey State Prison for a term of one to two years and fined $1,000. His appeal, in which the sentence was not challenged, resulted in the conviction being affirmed by the Appellate Division in an unreported opinion, and we denied certification, 66 *N. J.* 328 (1974).

Thereafter defendant brought a motion for a reduction of sentence pursuant to *R.* 3:21–10. After a hearing the motion was denied, and this determination was affirmed by the Appellate Division, also in an unpublished opinion. On defendant's petition we granted certification, 68 *N. J.* 167 (1975). Throughout the proceedings Tumminello has remained free on bail.

Defendant's position essentially is that changed circumstances since the date of his original sentence justify a modification of his sentence as provided by *R.* 3:21–10. Those circumstances are said to consist of (a) a drastic deterioration in defendant's health and (b) a change in the state of our law. The first relates to the progressive effects of diabetes mellitus, and the second to this Court's decision in *State v. Souss,* 65 *N. J.* 453 (1974), handed down after the sentencing here in question and, according to defendant, setting forth certain guidelines which should lead to probation in this case. Because of our determination on the first ground, we need not address the second.

At the time of sentencing in November, 1972, Tumminello was 43 years old, married, the father of two children, and without any record of criminal involvement prior to the present conviction. At the time of his arrest he had worked for the same employer for about 10 years. In June, 1971, shortly after he had been indicted, defendant learned he was suffering from diabetes. The following month as a consequence of that disease he was hospitalized, and a toe on his right foot was removed. He returned to the hospital in December for further surgery necessitated by an infection.

Following his sentencing Tumminello was again confined to the hospital in May, 1973, for an operation on his left foot. After having been home for only a week after that confinement he returned for amputation of a toe on that foot; and about a year later another toe was removed from the same foot. While the cause was pending before this Court, still another toe was amputated.

The treating physicians have furnished affidavits describing Tumminello's condition as peripheral neuropathy secondary to diabetes, resulting in ulcerations of both feet which in turn become infected and require periodic debridement and special footwear. He receives medication on a regular basis, undergoes urine and blood testing, and there must be "meticulous attention * * * to proper care of the feet." One physician was of the opinion that the aggravating circumstance of imprisonment "might well result in the loss of one or both of his legs due to infection." The State has countered with a letter from the Chief Medical Consultant to the Department of Institutions and Agencies (who, however, has never seen defendant or his medical records and whose opinion is based upon information obtained in a telephone conversation with a deputy attorney general) to the effect that the prison medical program is adequate to insure that Tumminello would receive "the kind of care which he would need for his medical problems."

To recapitulate: at the time of sentencing defendant had lost one toe; as of the motion to amend the sentence, two more toes had been amputated; and by the time the case was argued before us, a fourth toe had been removed.

■ ■ Reduction or change of sentence is treated in *R.* 3:21–10 which reads in part as follows:

(a) Time. Except as provided in paragraph (b) hereof, a motion to reduce or change a sentence shall be filed not later than 60 days after the date of the judgment of conviction, or, if a direct appeal is taken, not later than 20 days after the date of the judgment of the appellate court. The court may reduce or change a sentence, either on motion or on its own initiative, by other entered within 75 days from the date of the judgment of conviction or, if a direct appeal was taken, within 35 days of issuance of the judgment of the appellate court, and not thereafter.

(b) Exceptions. A motion may be filed and an order may be entered at any time (1) changing a custodial sentence to permit entry of the defendant into a custodial or non-custodial treatment or rehabilitation program for drug or alcohol abuse, or (2) amending a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant or (3) changing a sentence for good cause shown upon the joint application of the defendant and prosecuting attorney.[1]

---

[1]Under the rule as it existed when the motion was heard on its adjourned date of December 20, 1974, the judge was in error in following a procedure which permitted the motion to be argued out of time (notice of motion was timely served and recited a return date that would have accommodated argument sufficiently promptly for the court to have decided the issue within the time mandate of the rule, but the return date was adjourned once at the request of defendant's attorney and once on the court's own motion). Prior to September 8, 1975, the effective date of an amendment which included, among other things, paragraph (b) quoted above, the only exceptions to the strict time limitations of paragraph (a) concerned changing a custodial sentence to permit transfer to a narcotics treatment center. Therefore, under the provisions in effect when defendant's motion was argued, the judge was foreclosed from entering an order favorable to this defendant because December 20 was not "within 35 days of issuance of the judgment of the appellate court" (here this Court's denial on October 29, 1974, of defendant's petition for certification following upon the Appellate Division's affirmance of his conviction, 66 *N. J.* 328 (1974) ; see *State v. Tillman*, 129 *N. J. Super.* 548 (Law Div. 1974), and *Pressler, Current N. J. Court Rules, Comment R.* 3:21–10).

Here the judge who originally sentenced defendant had been elevated to the Appellate Division by the time the motion was brought, and consequently the motion was heard by a different judge. Defendant's argument before the latter was not that the sentencing judge had erred but rather, as we have already indicated, that "there has been a significant deterioration physically since 1972." The motion judge predicated his denial of relief on a manifest reluctance to "review" the sentencing judge's action and on the notion that the changed circumstances were simply a natural progression of the same medical condition to which the sentencing judge had previously been alerted.

Before the Appellate Division defendant urged, as he does here, that the motion judge failed to exercise his discretion and that therefore the court should invoke its original jurisdiction to determine the application for a reduction in sentence. After reviewing the record that court concluded there was no basis for changing the sentence originally imposed.

■ We disagree. Whether the motion judge's action be looked upon as a mistaken exercise of discretion or a failure to exercise any discretion at all, we conclude that he was in error, as was the Appellate Division, in not modifying the original sentence. Inasmuch as defendant's condition continues to deteriorate, as evidenced by the amputation of another toe while the case was pending here, we undertake

In this case that error has no significance inasmuch as the amended version of the rule controls, permitting the bringing "at any time" of a motion and entry of an order amending a custodial sentence when illness or infirmity is the basis of the motion, *R.* 3:21-10(b)(2). Rules relating to procedures or remedies or which are ameliorative in nature are given retrospective application where, as here, vested rights are not thereby disturbed. *E. g., Feuchtbaum v. Constantini,* 59 *N. J.* 167, 172 (1971). However, had this application for a change in sentence been one not covered by one of the exceptions in paragraph (b), then the time limitations of paragraph (a) (which cannot be enlarged, see *R.* 1:3-4(c)) would apply and the motion judge would have had no authority under the rule to enter an order reducing or changing the sentence.

to exercise our original jurisdiction for the purpose of achieving a final determination of the cause, *R.* 2:10–5.

■ ■ The situation before us is precisely the kind of case contemplated by paragraph (b) of *R.* 3:21–10 and is addressed to the sound discretion of the court. Nothing in the transcript of the original sentencing hearing suggests that the sentencing judge had any reason to envision the rapid progress and devastating effects of the disease on the defendant. He had before him no medical evidence whatsoever. The only reference to Tumminello's diabetes is found in four brief sentences of defense counsel's plea for a non-custodial sentence, much of which attacked the integrity of the conviction and centered on defendant's good reputation. While it may be, as the motion judge observed, that the present state of Tumminello's health is just a "progression of what [the sentencing judge] knew about," it does not at all follow that the sentencing judge had any reason to take such a natural progression into consideration when he meted out a custodial term. His attention was never drawn to the medical possibilities which eventually came to pass. Indeed, he made no reference whatsoever to defendant's health. And if the motion judge exercised an educated discretion in the face of the different state of affairs which confronted him, we are unable to discern it from the record.

We are satisfied that the ends of justice will best be met by a suspension of the custodial aspect of the sentence heretofore imposed. In reaching this conclusion we reject the State's implicit suggestion that the beneficent provisions of *R.* 3:21–10(b) should never be indulged when the disease upon which the application is grounded is amenable to treatment within the prison setting. There remains unanswered in this case the treating physician's assertion that defendant may well lose both legs if imprisoned. The disease is such that this unfortunate result may eventuate anyway; but in the circumstances before us we choose to minimize so much of that risk as is within our power to affect. Among those circumstances which influence our determination are the

nature of the crime involved and the fact that this is defendant's first brush with the law. The scale might very well tip in favor of incarceration despite the possibility of adverse physical effects were we faced with an experienced criminal or with a more shocking crime.

We conclude with a word of guidance. *R.* 3:21–10 contains no specific command that the court set forth its reasons in ruling on a motion to reduce or change sentence, whereas such a requirement is part of our rule governing the original imposition of sentence, *R.* 3:21–4(e). At least some of the underlying policy considerations which favor the furnishing of reasons on sentencing are equally applicable to a change of sentence: to provide an appellate court with the means by which to review a decision on sentencing, see *e. g., State v. Kunz,* 55 *N. J.* 128 (1969); *State v. Odom,* 113 *N. J. Super.* 186 (App. Div. 1971); *Pressler, Current N. J. Court Rules, Comment R.* 3:21–2; *cf. State v. Pohlabel,* 61 *N. J. Super.* 242, 248, 252 (App. Div. 1960); and to contribute to uniformity of sentencing, see Coburn, "Disparity in Sentences and Appellate Review of Sentencing," 25 *Rutgers L. Rev.* 207, 217 (1971). It might even be suggested that requiring a statement of reasons on a motion to reduce the sentence may deter trial judges from imposing "a newspaper sentence on one day and a quiet reduction several days later." *Cf. ABA Project on Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures* § 6.1, comment (a) (Approved Draft, 1971).

We note that *Fed. R. Crim. P.* 35, after which *R.* 3:21–10 is patterned, likewise has no specific requirement for a statement of reasons. However, in at least one case, *McGee v. United States,* 462 *F.* 2d 243 (2d Cir. 1972), the court imposed such a requirement upon denial of an application for sentence reduction. There the trial court had denied a motion to reduce sentence following reversal of a conviction on one count of a four count indictment. The Court of Appeals, in reviewing the denial of the motion to reduce,

observed that the dismissed count was by far the most serious of the four, and it could not determine from the record why there had been no reduction. Accordingly, the case was remanded with the admonition that an enumeration of the reasons "is the minimum necessary to impart integrity to those sentences, where the trial judge has been spared the more extensive task of resentencing appellant on the valid counts." 462 *F.* 2d at 247. It is worth noting too that while federal judges generally have no obligation to set forth reasons even on original sentencing, they have sometimes been encouraged to do so then as well as when ruling on a motion to change or reduce the sentence. See *United States v. Brown,* 479 *F.* 2d 1170, 1173 (2d Cir. 1973); *United States v. Espinoza,* 481 *F.* 2d 553, 557–58 (5th Cir. 1973); *cf. United States v. Driscoll,* 496 *F.* 2d 252, 254 (2d Cir. 1974).

We are therefore of the view that in ruling on *R.* 3:21–10 applications for reduction or change of sentence, the court should state on the record the reasons supporting its decision. We would anticipate that in due course our Criminal Practice Committee will present an appropriate amendment to our rules embodying the principles here expressed.

The judgment below is reversed and the cause remanded to the Superior Court, Law Division, for entry there of an order, consistent with this opinion, modifying the sentence imposed on defendant by suspending so much of that sentence as calls for a custodial term.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.