**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3786-19T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ALFREDO LOPEZ,

      Defendant-Appellant.

_____

Submitted August 10, 2020 – Decided August 25, 2020

Before Judges Moynihan and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment Nos. 12-06-9271 and 13-10-1370.

Joseph E. Krakora, Public Defender, attorney for appellant (Jennifer M. Blum, Assistant Deputy Public Defender, of counsel and on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

While defendant Alfredo Lopez was serving a ten-year prison sentence with five years of parole ineligibility,[1] he filed a motion to suspend the remainder of the custodial term "until the current COVID-19 pandemic ceases," or, alternatively, to amend his sentence to permit his release under Rule 3:21-10(b)(2) because of illness.  Defendant appeals from the trial court's order denying his motion, arguing:

> POINT I
>
> THE TRIAL COURT MISAPPLIED THE PREVAILING LAW AS IT RELATES TO THE 'SERIOUS NATURE OF DEFENDANT'S MEDICAL CONDITION AND THE DELETERIOUS EFFECT OF INCARCERATION ON DEFENDANT'S HEALTH' UNDER STATE V. PRIESTER, 99 N.J. 123 (1985).
>
> POINT II
>
> THE TRIAL [COURT] FAILED TO PROPERLY WEIGH ALL OF THE PRIESTER FACTORS IN DETERMINING THAT DEFENDANT WAS INELIGIBLE . . . FOR RELEASE.

We disagree and affirm.

---

[1]  Defendant completed an aggregate seven-year prison term with forty-two months of parole ineligibility under Indictment No. 12-06-9271 before commencing a current consecutive term under Indictment No. 13-10-1370.

A-3786-19T4

Defendant sought to amend his sentence and permit his release under Rule 3:21-10(b)(2) because the stage IV renal failure from which he suffered when he was sentenced advanced to stage V, and he recently had an arterial venous fistula implanted to facilitate kidney dialysis treatment.[2] He was thus required to first demonstrate a change of circumstances resulting in a severe depreciation of his health since sentence was imposed. Priester, 99 N.J. at 136-37. If defendant made that predicate showing,

> the trial court [would be compelled to] weigh various factors that affect the decision whether to grant a release such as, the nature and severity of the crime for which he is imprisoned, his criminal record, the risk that might result to the public by his release, . . . the nature of th[e] illness and the availability of appropriate medical services in prison to adequately treat or cope with that illness.
>
> [State v. Wright, 221 N.J. Super. 123, 127 (App. Div. 1987).]

Defendant had to also establish "that the medical services unavailable at the prison would be not only beneficial . . . but are essential to prevent further deterioration in his health." Priester, 99 N.J. at 135.

---

[2] Defendant did not advance in his merits brief that any other medical condition, including hypertension and secondary hyperthyroidism that are noted in the St. Francis Medical Center records submitted to the trial court, are cause for the relief he seeks.

A-3786-19T4

From the trial court's oral decision, we glean that the it considered 2017 prison records, a medical expert's submission detailing "statistics and data and the risk posed by the spread of COVID-19 in our prison systems," and "more recent medical records from St. Francis Medical Center," which the court found "corroborate[d] and verif[ied] the medical conditions" from which defendant suffers.

The trial court found medical documentation provided to the sentencing court established defendant was diagnosed with stage IV kidney failure in 2005. After reviewing defendant's lengthy criminal record—including "a long history of dealing drugs, including substantial quantities of heroin"—for which he received multiple state-prison terms, the trial court deduced defendant's renal failure did not prevent his escalating criminal activity, and did not "deter [defendant] from getting arrested, getting convicted[] and re-offending," up through the charges for which he was most recently sentenced which included: second-degree eluding involving "a high-speed chase through several . . . towns,"; third-degree hindering apprehension; second-degree possession of heroin—approximately 2250 glassine bags—with intent to distribute; and third-degree possession of heroin, consecutive to defendant's current sentence for first-degree possession of heroin—10,750 glassine envelopes—with intent to

A-3786-19T4

distribute. The court found that despite defendant's profession of reformation, "[t]hat does not lessen the severity or the risk in the event he were released" because of defendant's repeated recidivism after release from prison.

From the medical records, the trial court found: proof of defendant's diagnosed medical condition; the spread of COVID-19 "within the New Jersey prison system"; and "that he is at higher risk than the general population of suffering serious illness or death in the event he contracts COVID-19." Further, the trial court found the advancement of defendant's renal failure to stage V "coupled with the increased risk . . . posed by the spread of COVID-19" amounted to a change of circumstances.[3]

The trial court also found defendant was not yet undergoing dialysis treatment, and was not presently infected with COVID-19. And, despite establishing the predicate change of circumstances, the court concluded "defendant has been and continues to be provided with all necessary and

---

[3] Our Supreme Court recently considered the impact of the COVID-19 pandemic and found "the worldwide pandemic that has afflicted New Jersey and its prison system amounts to a change in circumstances under . . . Rule [3:21-10(b)(2)]." In re Request to Modify Prison Sentences, Expedite Parole Hearings, & Identify Vulnerable Prisoners, ___ N.J.___, ___ (2020) (slip op. at 21).

essential treatment for his medical conditions while in prison" by the Department of Corrections (DOC).

The trial court also considered the details of the crimes for which defendant was sentenced, their severity, his criminal record, and the risk to the public if defendant were released. We note the court carefully delineated the facts that led to those findings. See Wright, 221 N.J. Super. at 127 (reiterating the Court's mandate in State v. Tumminello, 70 N.J. 187, 194-95 (1976), that "the trial court is required to detail the reasons for granting or denying the relief to the end that there may be a meaningful review"). The trial court balanced the evidence relating to the Priester factors and denied defendant's Rule 3:21-10(b)(2) motion.

Recognizing a sentencing amendment under Rule 3:21-10(b)(2) "must be applied prudently, sparingly[] and cautiously," Priester, 99 N.J. at 135, we determine the trial court did not abuse its discretion in denying the motion, see id. at 137; Tumminello, 70 N.J. at 193. In his merits brief, defendant concedes, as he admitted to the court during oral argument, he is able to receive dialysis treatment inside the prison facility. Although he argues the trial court did not properly evaluate that "it is the very real risk of contracting the virus . . . that creates the serious risk to [defendant's] health," our Supreme Court made clear

6

"[a] generalized fear of contracting an illness is not enough." In re Request to Modify Prison Sentences, ___ N.J. at ___ (slip op. at 21).

We note the dearth of proof relating to the impact of the prison environment on defendant's particular medical condition. See Wright, 221 N.J. Super. at 130. As the trial court noted, defendant did not present any medical evidence that his condition deteriorated in the three months prior to the motion hearing, and he had twice refused to allow the implantation of the port used to facilitate dialysis treatment, which had not yet commenced at the time the motion was heard. Unlike the defendant in Tumminello—a case which defendant argues is apposite—whose worsening diabetes mellitus necessitated multiple amputations and who was unable to maintain the sanitary conditions in prison necessary to avoid ulcerations, infections and further amputations, 70 N.J. at 190, defendant has not established that continued imprisonment would cause his renal condition to deteriorate or that the DOC is unable to address his medical needs. And unlike defendant, the defendant in Tumminello was a first-time offender, id. at 193-94, whose medical condition was unknown to the sentencing court, id. at 193.

"To prevail on a [Rule 3:21-10(b)(2)] motion, inmates must . . . present evidence of both an 'illness or infirmity' -- a physical ailment or weakness -- and

the increased risk of harm incarceration poses to that condition." In re Request to Modify Prison Sentences, ___ N.J. at ___ (slip op. at 20-21). The trial court properly considered all the pertinent factors and did not abuse its discretion in balancing those factors and denying defendant's motion.

Defendant's remaining arguments lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). The record belies defendant's contention that the trial court failed to consider the impact of defendant's efforts at rehabilitation on his risk of re-offense and that posed to the community. During the first motion hearing, the court heard defense counsel's recitation of defendant's in-prison efforts, and listened as defendant read what the trial court characterized in its decision as a "heartfelt" letter describing those efforts and more at the second motion hearing. The court stated it was

> certainly . . . incorporating [defendant's] statements to the [c]ourt . . . regarding his remorse, what he submits to th[e c]ourt is a change and a repentant attitude for his past crimes, and his assertion that he will change and, if released, he will not re-offend. So [the court] certainly consider[s] all of that in terms of [its] decision as well, although much of . . . it goes to the relative risk of re-offense and risk to the community.

But the trial court concluded,

> although [it] appreciate[s] his sentiments . . . and hope[s] they're sincere, that maybe . . . now he

appreciates the impact that his conduct and others who do the same thing have had on the community[, t]hat does not lessen the severity or the risk in the event he were released.

We also reject defendant's contention that the trial court failed to properly weigh the DOC's decision to transfer defendant to full-minimum status thus recognizing defendant does not represent a risk. The risk posed by defendant within the prison system does not equate with the risk the trial court found if defendant was released.[4]

Defendant does not challenge the trial court's denial of his motion to suspend the remainder of the custodial term "until the current COVID-19 pandemic ceases," mentioning only in the combined procedural history and statement of facts section of his merits brief that the trial court distinguished this case from State v. Boone, 262 N.J. Super. 220 (Law Div. 1992). See Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008). In any event, we determine the trial court properly found Boone inapposite. As our Supreme Court described:

---

[4] We agree with the State that defendant's inclusion of the DOC's reason for disapproving of defendant's release under Executive Order #124 should not be considered. That denial was made subsequent to the trial court's motion decision. Defendant did not move to supplement the record, R. 2:5-5, and this appeal does not involve the DOC's decision.

The Law Division's decision in <u>Boone</u> does not afford a basis for a broad-based judicial furlough process. <u>Boone</u> involved an extraordinary situation that the Commissioner brought to the court's attention: an inmate with a rare and potentially dangerous condition needed to be examined quickly for possible aortic replacement surgery, which could be performed only at a hospital in Texas. 262 N.J. Super. at 222. The Commissioner had no statutory authority to grant a furlough outside of New Jersey, so he asked the court to intervene. <u>Ibid.</u> The trial [court] relied on the court's "inherent authority to act to preserve life" and "granted a judicial furlough." <u>Id.</u> at 223. At the same time, the court noted "this power should be sparingly utilized in the very rarest of cases." <u>Id.</u> at 224.

[<u>In re Request to Modify Prison Sentences</u>, ___ N.J. at ___ (slip op. at 19).]

Defendant's medical condition does not present one of those "rarest of cases."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3786-19T4