**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3858-19T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DAVID CHAVIES, a/k/a
DAVID Q. CHAVIES, and
DAVE CHAVIES,

     Defendant-Appellant.

_____

Submitted September 16, 2020 – Decided September 24, 2020

Before Judges Vernoia and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 15-05-0564.

Joseph E. Krakora, Public Defender, attorney for appellant (Olivia Moorhead, Assistant Deputy Public Defender, of counsel and on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Christian E. Fisher, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant David Chavies appeals from a June 10, 2020 order denying his Rule 3:21-10(b)(2) motion to be released from custody and denying his alternative request for a judicial furlough. We affirm, substantially for the reasons set forth in the well-reasoned opinion of Judge Peter E. Warshaw, Jr.

In June 2016, defendant pled guilty to an amended charge of second-degree aggravated assault based on accomplice liability, N.J.S.A. 2C:12-1(b)(1) and N.J.S.A. 2C:2-6. He was sentenced on August 5, 2016, to a ten-year prison term with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

In May 2020, due to concerns related to the COVID-19 pandemic, defendant filed a motion for release from custody pursuant to Rule 3:21-10(b)(2); in the alternative, he requested relief by way of a judicial furlough. To support his application, defendant supplied his medical records dating back to August 2016. His medical records demonstrated he suffered from a variety of health issues, including asthma, latent tuberculosis, hypothyroidism, a heart murmur, and sickle cell anemia.

Defendant argued his health conditions rendered him vulnerable to serious illness or death if he contracted COVID-19. Additionally, he claimed the prison facility where he was housed could not prevent the spread of the virus because

social distancing was not possible in a prison that held over 1000 inmates and because inmates were unable to control their contacts with others.

On June 10, 2020, without conducting a hearing, Judge Warshaw found defendant was barred from obtaining relief under Rule 3:21-10(b)(2). Citing to State v. Mendel, 212 N.J. Super. 110, 113 (App. Div. 1986), the judge determined that while the length of defendant's sentence was discretionary, "the eighty-five percent minimum period of parole ineligibility is statutorily mandated. N.J.S.A. 2C:43-6(a)(2)."

For the sake of completeness, Judge Warshaw also considered whether defendant qualified for release under the factors outlined in State v. Priester, 99 N.J. 123 (1985). First, the judge analyzed whether defendant's health issues placed him at higher risk to suffer medical complications should he contract COVID-19 and whether the pandemic constituted a change in circumstances entitling defendant to seek relief from the court. The judge answered these inquiries in the affirmative, but noted he was aware of defendant's adverse health conditions when he imposed the NERA sentence.

Next, Judge Warshaw determined the Department of Corrections had provided and would continue to provide treatment for defendant's preexisting conditions, as well as treat any potential COVID-19 infection. Also, the judge

found defendant did not establish that incarceration caused defendant's health to deteriorate. As defendant merely alleged a future possibility that he may contract the virus, Judge Warshaw concluded that "possible future degeneration does not satisfy the third Priester []factor." The judge also correctly noted that "our Supreme Court unequivocally stated: 'a generalized fear of contracting an illness is not enough.'" In the Matter of the Request to Modify Prison Sentences, Expedite Parole Hearings, and Identify Vulnerable Prisoners, ___ N.J. ___, ___ (2020) (slip op. at 21).

Turning to several other Priester factors, the judge examined the nature and severity of defendant's underlying crime; the severity of his sentence; defendant's criminal record; the risk to the public posed by his release; and defendant's role, if any, in bringing about his current health status. Priester, 99 N.J. at 137. We note that of these factors, "public security must be the paramount goal," because "primary among the hierarchy of governmental objectives is the obligation to protect the citizen against criminal attack." State v. Verducci, 199 N.J. Super. 329, 334-35 (App. Div. 1985).

As Judge Warshaw observed, defendant was convicted of participating in the shooting of two innocent bystanders who required hospitalization for their multiple gunshot wounds. The judge found defendant "graduated from juvenile

4

delinquency to serious violence," signaling a "disturbing escalation of [d]efendant's aberrant conduct."  Further, he determined that defendant's release would pose a danger to public safety and that overall, the Priester factors weighed against defendant's release from custody.  Lastly, Judge Warshaw found defendant was not entitled to a judicial furlough under State v. Boone, 262 N.J. Super. 220 (Law Div. 1992).[1]

On appeal, defendant presents the following arguments for our consideration:

### Point I

Appellant is entitled to a hearing on his motion for release under New Jersey Court Rule 3:21-10(b)(2).

### Point II

Appellant is not barred from Relief under Rule 3:21-10(b)(2) due to parole disqualifier as it does not require a change of sentence.

### Point III

Appellant has met the legal standard for release under State v. Priester, having shown the deleterious effect incarceration has had on his health, due to his

---

[1] Defendant acknowledges at footnote five of his brief that although he initially requested alternative relief under Boone, he concedes this argument in light of the Court's ruling in Request to Modify Prison Sentences, ___ N.J. at ___ (slip op. at 19-20).

A-3858-19T4

underlying medical conditions and ongoing C[ovid]-19 pandemic, and seeks a new hearing.

Having considered these arguments, we are not persuaded.

Rule 3:21-10(b)(2) must be construed in a manner consistent with the Code of Criminal Justice. Mendel, 212 N.J. Super. at 113. Much like the constraints on a movant who seeks to attend a drug rehabilitation program under Rule 3:21-10(b)(1), relief under Rule 3:21-10(b)(2) due to the illness or infirmity of a defendant, "may not be accorded until a mandatory period of parole ineligibility has been served." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2 on R. 3:21-10 (2021). In Mendel, a Rule 3:21-10(b)(1) case, Judge Edwin H. Stern wrote that:

> There is a distinction between an ineligibility term required by statute and one imposed as a matter of discretion by the court . . . . An application may be made under R. 3:21-10 when the defendant is serving a parole ineligibility term imposed by the court but not required by statute as a mandatory sentence. When defendant is serving a period of parole ineligibility imposed as a matter of discretion, the court can consider an application under R. 3:21-10(b) in accordance with the standards for consideration of such an application. See e.g., State v. Priester, 99 N.J. 123 (1985); State v. Tumminello, 70 N.J. 187 (1976); State v. Davis, 68 N.J. 69, 84-86 (1975)[;] State v. McKinney, 140 N.J. Super. 160, 163 (App. Div. 1976). The court should also, of course, consider the aggravating and mitigating factors which led to the

sentence originally imposed including an ineligibility term.

> However, a sentence cannot be changed or reduced under R. 3:21-10(b) below the parole ineligibility term required by statute. See N.J.S.A. 2C:43-6c. See also State v. DesMarets, 92 N.J. 62 (1983). R. 3:21-10(b) was never intended to permit the change or reduction of a custodial sentence which is required by law. See State v. Stanley, 149 N.J. Super. 326, 328 (App. Div. 1977); . . . . R. 3:21-10 must be read in light of those provisions of the Code of Criminal Justice which require parole ineligibility terms. Where a parole ineligibility term is required or mandated by statute, an application may not be granted under R. 3:21-10(b) so as to change or reduce that sentence.
>
> [212 N.J. Super. at 112-13.]

Although the Supreme Court did not directly address the application of Rule 3:21-10(b)(2) to defendants serving mandatory periods of parole ineligibility, in Request to Modify Prison Sentences, it is notable that the Court concluded that Boone "cannot be read as a basis for courts to order and oversee a wide-ranging furlough program in place of the Commissioner" and that Boone "does not afford a basis for a broad-based judicial furlough process." ___ N.J. at ___ (slip op. at 19-20). In Boone, the inmate had not completed the period of mandatory ineligibility at the time he sought a "judicial furlough." 262 N.J. Super. at 221. The trial court held that a mandatory sentence did not preclude the grant of such a furlough. Id. at 222-24.

In Request to Modify Prison Sentences, the Court explained that "Boone involved an extraordinary situation," an inmate with a rare, threatening condition which required that he be examined quickly for possible aortic replacement surgery, a surgery which could be performed only at a certain Texas hospital. Id. at 19. The Court further noted that in Boone, the Commissioner of the Department of Corrections sought the medical furlough and the trial court granted the request based on its "inherent authority to preserve life" – a "power [that] should be sparingly utilized in the very rarest of cases." Id. at 19 (quoting Boone, 262 N.J. Super. at 224).

As the Court distinguished Boone and determined "Rule 3:21-10(b)(2) . . . does not give the Judiciary broad authority to oversee a furlough program," id. at 20, we likewise decline to read the Court's declaration that "Rule 3:21-10(b)(b) gives all inmates an opportunity to seek direct relief in court," id. at 23, as permitting relief from mandatory minimum parole ineligibility terms imposed under NERA. While all inmates may be able to seek relief under Rule 3:21-10(b)(2), which specifically allows for "amending a custodial sentence to permit the release of a defendant" due to illness or infirmity, we are satisfied such relief should only be available to inmates who have served their mandatory parole ineligibility term.

We are mindful that a <u>Rule</u> 3:21-10(b)(2) motion "is committed to the sound discretion of the court." <u>Priester</u>, 99 N.J. at 135. "It is an extension of the sentencing power of the court, involving the same complexity as the sentencing decision and the same delicate balancing of various factors." <u>Ibid.</u> Because the benefit an inmate enjoys from the provisions of this rule are extraordinary, it "must be applied prudently, sparingly, and cautiously." <u>Ibid.</u> Accordingly, to succeed on a <u>Rule</u> 3:21-10(b)(2) motion, it is the prisoner's burden to demonstrate that "medical services unavailable at the prison . . . are essential to prevent further deterioration in [the inmate's] health." <u>Ibid.</u> Guided by these standards, we are satisfied Judge Warshaw properly denied defendant's <u>Rule</u> 3:21-10(b)(2) motion and correctly determined defendant did not meet his burden under <u>Priester</u> or <u>Boone</u> to warrant the relief he requested.

Finally, defendant's argument that we should remand this matter because Judge Warshaw did not conduct a hearing before he issued his June 10, 2020 order is unconvincing. <u>Rule</u> 3:21-10(c) confirms a hearing "need not be conducted" on a <u>Rule</u> 3:21-10(b) motion unless the trial court determines that "a hearing is required in the interest of justice." Here, after carefully reviewing the voluminous submissions of the parties, the judge confirmed no hearing was

necessary because of the "high quality of the submissions."  The judge's assessment in this regard is overwhelmingly supported by the record.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3858-19T4