**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4000-19T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE LUIS SUAREZ,

    Defendant-Appellant.

_____

Submitted September 22, 2020 – Decided October 8, 2020

Before Judges Yannotti and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 07-04-0573.

Joseph E. Krakora, Public Defender, attorney for appellant (Jessica K. Spencer, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from an order entered by the Law Division on July 2, 2020, which denied his motion pursuant to Rule 3:21-10(b)(2) for release due to illness or infirmity. We affirm.

I.

Defendant was charged under Indictment No. 07-04-0573 with murder, N.J.S.A. 2C:11-3(a)(1) or (2); felony murder, N.J.S.A. 2C:11-3(a)(3); and robbery, N.J.S.A. 2C:15-1. On August 28, 2007, defendant pleaded guilty to an amended charge of aggravated manslaughter under N.J.S.A. 2C:11-4(a)(1), a first-degree offense.

In his plea colloquy, defendant stated that on November 8, 2006, he went to Roberto Prieto's home to ask him for a loan. At the time, defendant was twenty-nine years old. Prieto was seventy-four. Defendant and Prieto argued. Defendant stated that Prieto hit him. Defendant punched Prieto in the face, causing him to sustain significant injuries. Defendant fled the house, leaving Prieto bleeding on the floor. Prieto died as a result of the injuries he sustained in the altercation.

Thereafter, defendant filed a motion to withdraw his guilty plea. The trial court denied the motion. At sentencing, the judge found aggravating factor nine. N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the

law).   The judge found mitigating factors seven, N.J.S.A. 2C:44-1(b)(7) (defendant has no history of delinquency or criminal activity or has led a law-abiding life for a substantial period of time); nine, N.J.S.A. 2C:44-1(b)(9) (defendant's character and attitude indicate he is unlikely to commit another offense); and the non-statutory mitigating factor of remorse.

The judge found the mitigating factors outweighed the aggravating factors and sentenced defendant to sixteen years of incarceration, with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.  The judge entered a judgment of conviction dated November 18, 2008.

Defendant appealed and challenged his sentence.  The appeal was heard on our Excessive Sentence Oral Argument calendar.  We entered an order affirming defendant's sentence.  State v. Suarez, No. A-3672-08 (App. Div. Jan. 11, 2012).  The Supreme Court denied defendant's petition for certification. State v. Suarez, 210 N.J. 479 (2012).  While the appeal was pending, defendant filed a motion to change or reduce his sentence.  The trial court denied the motion.

Defendant later filed another motion to reconsider or reduce his sentence. By order entered on November 12, 2015, the trial court denied the motion.  We

A-4000-19T4

affirmed the trial court's order.  State v. Suarez, No. A-1518-15 (App. Div. May 23, 2017) (slip op. at 4).  In our opinion, we noted that NERA imposes a mandatory period of parole ineligibility for certain offenses, including first-degree aggravated manslaughter.  Id. at 3.  We stated that "[a] sentence cannot be changed or reduced under Rule 3:21-10(b) below the parole ineligibility term required by statute."  Ibid. (quoting State v. Mendel, 212 N.J. Super. 110, 113 (App. Div. 1986)).

According to defendant, he became eligible for transfer to a halfway house on June 1, 2020.  It is unclear from the record whether the NJDOC approved the transfer.  Defendant claims that, as a result of the COVID-19 pandemic, he has remained incarcerated at South Woods State Prison (SWSP).

On June 18, 2020, defendant filed a motion for release pursuant to Rule 3:21-10(b)(2), based on an illness or infirmity.  Defendant asserted that due to his medical conditions, diabetes and high blood pressure, he was at risk of suffering a serious illness if he contracted COVID-19.  Defendant also claimed his continued incarceration at SWSP violated his rights under the Eighth Amendment to the United States Constitution.  The State opposed defendant's release.

A-4000-19T4

Judge Patrick J. Arre heard oral argument and thereafter entered an order dated July 2, 2020, denying defendant's motion. In an accompanying written opinion, Judge Arre stated that Rule 3:21-10(b)(2) does not permit the court to change or reduce a sentence until after a defendant has completed his or her parole ineligibility term mandated by statute. The judge noted that NERA applies to defendant's sentence for aggravated manslaughter, and he will not be eligible for parole until June 1, 2022. The judge found that defendant could not seek relief under Rule 3:21-10(b)(2) until he serves the mandatory minimum term of incarceration required by NERA.

The judge nevertheless considered the merits of defendant's motion and found that he did not meet the criteria for release under the Rule. The judge also rejected defendant's contention that his continued incarceration at SWSP violated his rights under the Eighth Amendment to the United States Constitution. This appeal followed.

II.

On appeal, defendant argues the trial court erred by concluding he could not seek release under Rule 3:21-10(b)(2) until he completes the mandatory minimum term imposed pursuant to NERA. Defendant also argues he meets the criteria for release under the Rule.

Rule 3:21-10(b)(2) provides in pertinent part that "[a] motion may be filed and an order may be entered at any time . . . amending a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant." The Rule allows the court to grant "extraordinary relief to a prisoner." State v. Priester, 99 N.J. 123, 135 (1985).

A motion for relief under Rule 3:21-10(b)(2) "is committed to the sound discretion of the court." Ibid. (citing State v. Tumminello, 70 N.J. 187, 193 (1976)). When considering the motion, the court must engage in the "delicate balancing of various factors." Ibid. "The predicate for relief under the Rule is proof of the serious nature of the defendant's illness and the deleterious effect of incarceration on the prisoner's health." Ibid.

To warrant relief under Rule 3:21-10(b)(2), the inmate must establish that the medical services that are "unavailable at the prison would be not only beneficial . . . but are essential to prevent further deterioration in [the defendant's] health." Id. at 135-36 (citing Tumminello, 70 N.J. at 193). The inmate also must show circumstances in his health have changed since the time of the original sentence. Id. at 136.

Further, the court must consider the "nature and severity of the crime, the severity of the sentence, the criminal record of the defendant, the risk to the

public if the defendant is released, and the defendant's role in bringing about his current state of health." Id. at 137. The trial court's decision on the motion should not be reversed on appeal unless the decision is shown to be a mistaken exercise of discretion. Ibid.

As noted, defendant argues Rule 3:21-10(b)(2) authorizes the court to order his release even though he has not completed the mandatory minimum prison term required by NERA. He argues that Priester permits the court, in the exercise of its authority under the Rule, to order his "outright release."

In Priester, the defendant pled guilty to aggravated sexual assault, in violation of N.J.S.A. 2C:14-2(a)(4) and (6). Priester, 99 N.J. at 129. The trial court sentenced defendant to a ten-year custodial term with a five-year period of parole ineligibility. Id. at 130. About one year after he was sentenced, the defendant sought relief under Rule 3:21-10(b)(2), asserting he suffered from certain medical conditions and that he would benefit from medical treatment and rehabilitative services that were available outside of the prison environment. Id. at 130-31.

The trial court denied relief. Id. at 131. This court reversed and excised the defendant's parole ineligibility term, so that the Parole Board could consider whether and under what circumstances the defendant should be released on

parole.  Ibid.  The Supreme Court held "that Rule 3:21-10(b)(2) may be applied only to release a prisoner from prison but not to reduce or change his sentence." Id. at 141.  The Court therefore reversed our judgment "excising" the defendant's parole ineligibility term.  Ibid.

Here, defendant was convicted of an offense to which NERA applies.  See N.J.S.A. 2C:43-7.2(d)(2).  NERA imposes a mandatory minimum period of incarceration, which is eighty-five percent of the sentence imposed.  N.J.S.A. 2C:43-7.2(a).  Release of a defendant from incarceration before the completion of his mandatory minimum period of incarceration would essentially represent a change or reduction in the sentence imposed.  We reject defendant's contention that Priester allows the court to order his release under Rule 3:21-10(b)(2).

Defendant also argues that Mendel supports his contention that he may seek release under Rule 3:21-10(b)(2).  In Mendel, the defendant filed a motion for a change or reduction of sentence pursuant to Rule 3:21-10(b)(1).  212 N.J. Super. at 112.  The defendant pled guilty to two counts of robbery and one count of conspiracy to commit those offenses, and he had been sentenced to two concurrent eight-year sentences, with four years to be served before parole eligibility on each.  Ibid.

We held that a defendant may move under <u>Rule</u> 3:21-10 for a change or reduction of sentence when the parole ineligibility term is imposed by the court "but not required by statute as a mandatory sentence." <u>Id.</u> at 112-13. We stated that the <u>Rule</u> "was never intended to permit the change or reduction of a custodial sentence which is required by law." <u>Id.</u> at 113.

Here, defendant argues that a sentence subject to NERA does not have a fixed period of parole ineligibility mandated by statute. He asserts NERA merely imposes a "proportional period" of parole ineligibility, which is applied to his sentence. He notes that in this matter, the trial court could have sentenced him to a term of ten-to-thirty years.

Defendant's argument is entirely without merit. The period of parole ineligibility established by NERA is "required by statute as a mandatory sentence." <u>Id.</u> at 112-13. Although the trial court has discretion in determining the length of the underlying sentence, the eighty-five percent period of parole ineligibility is mandated by NERA. Thus, <u>Mendel</u> does not support defendant's contention that he is entitled to seek release under <u>Rule</u> 3:21-10(b)(2).

We note that in its recent decision in <u>In Re Request to Modify Prison Sentences, Expedite Parole Hearings, & Identify Vulnerable Prisoners</u>, 242 N.J. 357, 367 (2020), the Court addressed Executive Order 124, which established a

9

process whereby certain inmates in state prison, who are particularly vulnerable to COVID-19, would be eligible for expedited parole consideration or a medical furlough.

In its opinion, the Court noted the Executive Order does not apply to all inmates in state prison but stated that Rule 3:21-10(b)(2) "gives all inmates an opportunity to seek direct relief in court." Id. at 380. The Court said the Rule allows "individual inmates to apply for release from jail based on their physical condition." Id. at 379.

The Court also stated that all inmates in state prisons could seek relief under Rule 3:21-10(b)(2). Id. at 380. The Court did not, however, hold that Rule 3:21-10(b)(2) authorizes the release of a prisoner before the completion of a mandatory minimum term required by established by statute.

In any event, even if we were to conclude defendant could seek relief under Rule 3:21-10(b)(2) before the completion of his period of parole ineligibility, the record supports Judge Arre's determination that defendant did not meet the criteria under Priester for release. In his opinion, the judge noted that under Request to Modify Prison Sentences, defendant has shown the COVID-19 pandemic "amounts to a change of circumstances under the [Rule]." 242 N.J. at 379.

A-4000-19T4

However, Judge Arre found defendant did not satisfy the remaining criteria for release under Rule 3:21-10(b)(2). The judge explained that although defendant provided documentation regarding his diabetes and high blood pressure, he did not present any evidence showing that the NJDOC had failed to provide him with treatment for either of those conditions while in jail. The judge noted the record shows the NJDOC has continued to meet defendant's medical needs and taken steps to mitigate and protect against the spread of COVID-19 in its correctional facilities.

Judge Arre also found defendant did not establish that the COVID-19 pandemic was having an actual deleterious effect upon his health conditions. The judge pointed out that defendant claimed he is at risk of suffering an illness he has not contracted. Our Supreme Court has observed that "[a] generalized fear of contracting an illness" is not a sufficient basis for relief under Rule 3:21-10(b)(2). Ibid.

The judge further found "the nature and severity of [defendant's] crime and sentence . . . weigh heavily against release." As stated previously, defendant is incarcerated as a result of his conviction of aggravated manslaughter. The judge noted that the Legislature considered this offense to be sufficiently severe

11

to warrant imposition of a custodial term with an eighty-five percent period of parole ineligibility, as provided in NERA.

We are therefore convinced the judge did not err by denying defendant's motion for release under Rule 3:21-10(b)(2). The judge considered the relevant factors under Priester and found they weighed against defendant's release. There is sufficient credible evidence to support the judge's findings of fact. We conclude the denial of defendant's motion for release was not a mistaken exercise of discretion.

III.

Defendant also argues his continued incarceration in the alleged "high-risk" environment at SWSP violates his rights under the Eighth Amendment to the United States Constitution and Article 1, paragraph 12 of the New Jersey Constitution. These constitutional provisions both bar the infliction of cruel and unusual punishments.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Estelle

v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).

To establish a violation of the Eighth Amendment, an inmate first must show the deprivation, objectively, is "sufficiently serious" as to result in the denial of "the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations omitted). Second, the prisoner must show that the corrections official had a "sufficiently culpable state of mind" and acted with "'deliberate indifference' to [the inmate's] health or safety . . . ." Ibid. (quoting Wilson, 501 U.S. at 297) (citations omitted).

The New Jersey courts have applied this standard in considering claims by prisoners regarding the adequacy of their medical care. See J.D.A. v. N.J. Dep't of Corr., 189 N.J. 413, 414-15 (2007) (considering an Eighth Amendment claim by inmates that the right to adequate medical care includes the maintenance of complete and adequate medical records); Pryor v. Dept. of Corrs., 395 N.J. Super. 471 (App. Div. 2007) (addressing inmates' Eighth Amendment claim that the State was deliberately indifferent to their serious medical needs). The New Jersey courts have not established a different standard for consideration of such claims under the New Jersey Constitution.

13

In this matter, Judge Arre found that defendant has not shown the NJDOC has been deliberately indifferent to the risk COVID-19 presents to inmates who suffer from medical conditions including diabetes and high blood pressure. The record supports the judge's finding that the "NJDOC has taken reasonable measures to abate the risk [that COVID-19] pose[s] to all inmates currently in custody."

Thus, defendant has not shown that requiring him to remain at SWSP represents a sufficiently serious deprivation. He also has not shown the NJDOC acted with deliberate indifference to his health or safety. We therefore conclude defendant failed to establish that his continued incarceration at SWSP violates his rights under the Eighth Amendment to the United States Constitution or Article 1, paragraph 12 of the New Jersey Constitution.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4000-19T4