**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4410-19T4

STATE OF NEW JERSEY,

    Plaintiff- Respondent,

v.

EVERETT MCGLOTTEN,

    Defendant-Appellant.

_____

Submitted October 15, 2020 – Decided October 28, 2020

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 88-02-0124.

Joseph E. Krakora, Public Defender, attorney for appellant (Christiane Cannon, Assistant Deputy Public Defender, of counsel and on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Everett McGlotten is an inmate at South Woods State Prison. He appeals from a June 19, 2020 Criminal Part order denying his motion for release from imprisonment under Rule 3:21-10(b)(2). Defendant claims he is subject to an enhanced risk of serious medical complications if he contracts COVID-19 because of his underlying medical conditions, which include: mild, intermittent asthma; hypertension; hypertensive kidney disease; diabetes; and hepatitis C. He is now seventy-one years old.

We derive the following facts from the record. In 1988, defendant was convicted of first-degree murder, second-degree possession of a weapon for an unlawful purpose, and third-degree unlawful possession of a weapon. He is serving an aggregate life term with a thirty-year period of parole ineligibility.

Defendant first became eligible for parole in January 2018. A two-member Parole Board panel denied parole, determining there was a substantial likelihood defendant would commit a new crime if he was released. The panel cited numerous reasons, including how the murder was committed; defendant's "extensive and increasingly more serious" criminal record; his "commission of numerous, persistent, and serious prison institutional infractions"; "insufficient problem resolution"; and the results of a risk assessment evaluation. The panel

requested that a three-member Board panel establish a Future Eligibility Term (FET) outside the presumptive twenty-seven-month limit.

In January 2018, a three-member Board panel confirmed the denial of parole and established a sixty-month FET. Defendant sought further agency review. In an August 2018 final agency decision, the full Parole Board affirmed the parole denial and sixty-month FET for essentially the same reasons expressed by the Board panels.

Defendant appealed and we affirmed the Parole Board's final decision substantially for the reasons expressed by the Parole Board. McGlotten v. N.J. State Parole Bd., No. A-0598-18 (App. Div. Apr. 28, 2020) (slip op. at 5). Defendant is currently eligible for parole on December 17, 2020.

Soon thereafter, defendant moved for immediate release under Rule 3:21-10(b)(2). He argued "that his advanced age and various medical conditions (diabetes, asthma, hypertension, mitral and tricuspid valve regurgitation, and hepatitis C) 'put him at extreme risk of serious illness and death if he contracts COVID-19.'" The trial court denied the motion for the reasons set forth in a June 26, 2018 written decision.

The court applied the factors set forth in State v. Priester, 99 N.J. 123, 133-37 (1985). It found that "[d]efendant suffers from a high-risk medical

condition, which was not necessarily caused by his own lifestyle, that he is at high risk age, and that the COVID-19 pandemic constitutes a 'changed circumstance'" that occurred since defendant was sentenced. (footnote omitted).

The court noted that only defendant's age and diabetes are recognized by the Center for Disease Control and Prevention (CDC) as creating a high-risk of serious medical complications if he contracts COVID-19. Scrutiny of defendant's medical records and CDC guidelines revealed:

> Defendant has mild, intermittent asthma, but the CDC only labels the moderate-to-severe variety as high-risk. Furthermore, [d]efendant's records consistently show normal respiratory function. The [d]efendant has hypertension, or high blood pressure, but the CDC only includes pulmonary hypertension (excessive blood pressure extending to the lungs) as high-risk. While mi[t]ral and tricuspid valve regurgitation is a condition that affects the heart by restricting blood flow, the CDC does not consider it a serious heart condition which may increase risk of severe illness from COVID-19. The CDC warns that chronic kidney disease of any stage increases risk for severe illness from COVID-19. The CDC warns that chronic kidney disease of any stage increases risk for severe illness from COVID-19. While the [d]efendant has hypertensive kidney disease, this does not fall under the same category. Additionally, as the State points out, the [d]efendant is not treated with dialysis. Lastly, the [d]efendant is diagnosed with hepatitis C. This disease, which affects the liver, is not currently recognized by the CDC as a high-risk condition.
>
> [(footnote omitted).]

While it recognized that "[d]efendant's advanced age and diabetes do render him high-risk to experience severe illness from COVID-19," the court concluded those conditions were not sufficiently "dire" to warrant "extraordinary relief" under Rule 3:21-10(b)(2).

The court then reviewed defendant's criminal history. Defendant was serving a sentence for murder, the most serious crime. The victim was shot "execution-style" by a co-defendant.

Defendant has an extensive criminal record that included convictions for armed robbery and assault with intent to kill. The court found defendant's record demonstrates a pattern of illegal conduct and violent behavior, culminating in murder. The court gave heavy weight to the Parole Board's finding that defendant was substantially likely to commit a new crime if released. The court also considered defendant's "numerous, persistent, and serious institutional infractions" while incarcerated and the sixty-month FET imposed by the Parole Board. The court found "[t]hese facts all weigh[ed] against release and show[ed] why the [d]efendant is a threat to public safety."

The court considered defendant's participation in beneficial programs while incarcerated and most recent behavior but was "not convinced" he "will not be a threat to the public if released." It concluded that aside from defendant's

5

advanced age and high-risk medical condition, "the remaining <u>Priester</u> factors all weigh[ed] in favor of the State," precluding release under <u>Rule</u> 3:21-10(b)(2).

This appeal followed. Defendant raises a single point for our consideration:

> THE COURT ABUSED ITS DISCRETION BY DENYING MEDICAL RELIEF TO [DEFENDANT] BECAUSE THE RECORD SHOWS THAT [DEFENDANT] IS NOT A THREAT TO THE PUBLIC AND HE FACES A LIFE-THREATENING RISK AT SOUTH WOODS STATE PRISON.

Defendant contends on appeal that he is an elderly, partially paralyzed prisoner with no institutional infractions since 2004, who "is in poor physical health, suffering from right-side paralysis subsequent to a stroke, diabetes, hypertension, history of paroxysmal atrial fibrillation, hypertensive kidney disease, asthma, and hepatitis C," who poses no threat to the public if released.

<u>Rule</u> 3:21-10(b)(2) permits an inmate to move at any time to amend a custodial sentence to permit release from incarceration because of illness or infirmity. Courts apply a balancing test to determine whether relief should be granted under the rule. <u>Priester</u>, 99 N.J. at 135-37.

Generally, to obtain such "extraordinary relief" under the rule, a defendant must show: (1) he suffers from a serious medical condition and the negative impact incarceration has on his health; and (2) a change in circumstances

between the time of sentencing and the motion. Id. at 135-36. When determining whether release is appropriate, the factors that courts consider include:

> "the serious nature of the defendant's illness and the deleterious effect of incarceration on the prisoner's health"; "the availability of medical services in prison"; "the nature and severity of the crime, the severity of the sentence, the criminal record of the defendant, [and] the risk to the public if the defendant is released."
>
> [In re Request to Modify Prison Sentences, Expedite Parole Hearings & Identify Vulnerable Inmates, ___N.J. ___, ___ (2020) (slip op. at 20) (quoting Priester, 99 N.J. at 135-37).]

In the context of the COVID-19 pandemic, "the nature of the inmate's illness and the effect of continued incarceration on his health -- are '[t]he [p]redicate for relief.'" Ibid. (alteration in original) (quoting Priester, 99 N.J. at 135). An inmate seeking relief under the rule must present "evidence of both an 'illness or infirmity' -- a physical ailment or weakness -- and the increased risk of harm incarceration poses to that condition. A generalized fear of contracting an illness is not enough." Id. at 20-21. The Court further held that the COVID-19 pandemic constitutes a change in circumstances under Rule 3:21-10(b)(2). Id. at 21. The Court noted, however, that the rule does not "provide authority

7

for the courts to establish and oversee a broad-based program to release or furlough inmates in state prison."  Id. at 5.

"A motion made pursuant to Rule 3:21-10(b)(2) is committed to the sound discretion of the court."  Priester, 99 N.J. at 135 (citing State v. Tumminello, 70 N.J. 187, 193 (1976)).  We review decisions granting or denying relief under the rule for abuse of that discretion.  Id. at 137.  An abuse of discretion occurs when a trial court makes "findings inconsistent with or unsupported by competent evidence," utilizes "irrelevant or inappropriate factors," or "fail[s] to consider controlling legal principles."  Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (citations and internal quotation marks omitted).  An abuse of discretion can also be found if the court "fails to take into consideration all relevant factors and when its decision reflects a clear error in judgment."  State v. C.W., 449 N.J. Super. 231, 255 (App. Div. 2017) (citing State v. Baynes, 148 N.J. 434, 444 (1997)).

It is undisputed that defendant's age and diabetes place him at greater risk of complications if he contracts COVID-19.  It is also clear that defendant is at

greater risk of contracting COVID-19 in prison, in part because of the inability of inmates to socially distance from one another.[1]

As recognized by the motion judge, however, defendant committed murder, the most serious crime. He is eligible for parole in December 2020.

Defendant does not claim "that the medical services unavailable at the prison would be not only beneficial . . . but are essential to prevent further deterioration in his health." Priester, 99 N.J. at 135. Nor does he claim his medical condition is rapidly deteriorating. See Tumminello, 70 N.J. at 193 (holding that medical evidence clearly established that the defendant's condition was rapidly deteriorating, and his health would be placed in greater danger by incarceration). Instead, defendant claims that he is vulnerable to serious medical complications if he contracts COVID-19 due to his underlying conditions.

The record shows defendant is prescribed medication for his underlying conditions. Notably, defendant does not contend that treatment is ineffective or that his conditions are not under control. Moreover, defendant did not produce

---

[1] The risks posed by COVID-19 "are amplified in jail settings." In re Request to Modify Prison Sentences, slip op. at 7. As noted by the Court, "[a]s of June 1, 2020, out of a total population of 15,302 inmates in state prison, 1720 had tested positive for the virus, about 192 had been hospitalized, and 46 had died. Up to 737 out of 8008 staff members had also tested positive." Id. at 2.

A-4410-19T4

any evidence or expert opinion that his stroke-related right-side paralysis enhances his risk of serious medical complications from COVID-19.

The record shows that defendant's diabetes and other conditions are effectively treated through medication administered to him in prison. See Priester, 99 N.J. at 135-36; State v. Wright, 221 N.J. Super. 123, 127 (App. Div. 1987) (stating the factors to be weighed include "the nature of th[e] illness and the availability of appropriate medical services in prison to adequately treat or cope with that illness"). While he claims that he is at enhanced risk of contracting COVID-19 in prison and suffering serious medical complications if that occurs, his medical condition is not rapidly deteriorating. Unlike the defendant in Tumminello, whose worsening diabetes necessitated multiple amputations and subjected him to the risk of infected ulcerations due to the inability to maintain sanitary conditions, 70 N.J. at 190, defendant has not presented any medical evidence that his condition deteriorated during the months leading up to the motion hearing. Nor has defendant shown that the DOC is unable to satisfactorily address his medical needs.

Defendant has also not provided evidence relating to the impact of the prison environment on his diabetes and other conditions. See Wright, 221 N.J. Super. at 130 (noting that "no expert or other competent evidence was produced

to indicate that the progress of the disease would be hastened by defendant's continued confinement for the relatively short time involved"). Nor has he established "that the medical services unavailable at the prison would be not only beneficial . . . but are essential to prevent further deterioration in his health." Priester, 99 N.J. at 135.

Being diabetic, hypertensive, and asthmatic, with those conditions controlled by medication administered to the inmate, does not automatically warrant relief under the rule. "A generalized fear of contracting an illness is not enough." In re Request to Modify Prison Sentences, slip op. at 21. To prevail on a Rule 3:21-10(b)(2) motion, an inmate must "present evidence of both an 'illness or infirmity' . . . and the increased risk of harm incarceration poses to that condition." Id. at 20-21.

Relief under Rule 3:21-10(b)(2) "must be applied prudently, sparingly, and cautiously." Priester, 99 N.J. at 135. The motion court properly considered and balanced the Priester factors. Its findings are supported by the record. We discern no abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4410-19T4